[No. A112886. First Dist., Div. One. Oct. 6, 2006.]

ANNI AMBERGER-WARREN, Plaintiff and Appellant, v.
CITY OF PIEDMONT, Defendant and Respondent.

## COUNSEL

Meier & Wolff and Andrew Wolff for Plaintiff and Appellant.

Low, Ball & Lynch, Mark F. Hazelwood and Guy W. Stilson for Defendant and Respondent.

**OPINION**

**MARCHIANO, P. J.**—Plaintiff Anni Amberger-Warren was injured when she slipped and fell in a dog park in Piedmont. She sued the City of Piedmont on the theory that her injuries were caused by a dangerous condition of public property, and defendant obtained summary judgment on the basis of trail immunity (Gov. Code, § 831.4, subd. (b)).[1] Plaintiff contends on appeal that, as a matter of law or as a triable issue of fact, the accident did not occur on a "trail" within the meaning of the immunity statute, and that, even if the accident happened on a trail, defendant is not insulated from liability because the accident was caused by dangerous conditions defendant created that were "unrelated" to the trail.

We examine the application of section 831.4 to a paved pathway in an urban park setting. The principal issues are: (1) whether the pathway in question was a "sidewalk" for purposes of section 831.4, and, if so, whether a sidewalk can ever be a "trail" under the statute; and (2) whether trail immunity precludes liability for the design and location, as well as the maintenance, of a trail. We hold that the pathway here is a trail under the statute, even if it could be characterized as a sidewalk, and that trail immunity covers claims arising from a trail's design and location. Based on these and other conclusions discussed below, we affirm the judgment.

## I. FACTS

Around 6:00 p.m. on June 29, 2004, plaintiff and her eponymous dog Diogi, and Susan Chow and her dog Rufus, were in the off-leash "lower loop" section of Linda Park, a dog park owned and operated by defendant. The off-leash area appears from the photos in evidence to be a fenced-in section of the park. "Designated Off-Leash Rules" are posted on the gated entrance to the area and inside it, which state among other things that "[o]wners are responsible for all injuries and/or property damage." Plaintiff admits that, before the accident in question, she had brought dogs to this off-leash area nearly every day for at least eight years without any mishap.

The "lower loop" is a paved pathway across a hill; the hill is described in the record as "a dirt embankment." Plaintiff and Chow were sitting on benches toward the bottom of the pathway while Diogi and Rufus played unleashed, when a woman came down the pathway and, apparently to protect her smaller dogs from Diogi and Rufus, said, "Get your dog." When plaintiff

---

[1] Unless indicated, all further statutory references are to the Government Code.

went up the pathway to put a leash on Diogi, she was bumped by Diogi or Rufus, slipped on some debris on the pathway, and fell backward, landing "part-way off" the pathway. To avoid going down the hill next to the pathway, she grabbed an exposed cement edge as she fell, and injured her hand in the process.

## II. DISCUSSION

### A. *Trail Immunity*

■ Section 831.4, subdivisions (a) and (b) provide that: "A public entity . . . is not liable for an injury caused by a condition of: [¶] (a) Any unpaved road which provides access to fishing, hunting, camping, hiking, riding, including animal and all types of vehicular riding, water sports, recreational or scenic areas and which is not a (1) city street or highway or (2) county, state or federal highway or (3) public street or highway of a joint highway district, boulevard district, bridge and highway district or similar district formed for the improvement or building of public streets or highways. [¶] (b) Any trail used for the above purposes." This immunity is afforded "to encourage public entities to open their property for public recreational use, because 'the burden and expense of putting such property in a safe condition and the expense of defending claims for injuries would probably cause many public entities to close such areas to public use.' " (*Armenio v. County of San Mateo* (1994) 28 Cal.App.4th 413, 417 [33 Cal.Rptr.2d 631] (*Armenio*).) The trail immunity provided in subdivision (b) of the statute extends to trails that are used for the activities listed in subdivision (a), and to trails that are used solely for access to such activities. (*Treweek v. City of Napa* (2000) 85 Cal.App.4th 221, 224–229 [101 Cal.Rptr.2d 883] (*Treweek*).) The immunity applies whether or not the trail is paved. (*Armenio, supra,* 28 Cal.App.4th at p. 418.)

### B. *Whether the Accident Occurred on a Trail*

Plaintiff submits that the pathway on which she was injured was not a trail for purposes of section 831.4, subdivision (b), or that the question is at least a triable issue of fact in this instance. We conclude that as a matter of law the pathway was a trail under the statute for the following reasons.

■ Whether the property is a trail depends on a number of considerations, including accepted definitions of the property (*Carroll v. County of Los Angeles* (1997) 60 Cal.App.4th 606, 609 [70 Cal.Rptr.2d 504] (*Carroll*);

*Treweek, supra,* 85 Cal.App.4th at p. 230), the purpose for which the property is designed and used, and the purpose of the immunity statute (*Farnham v. City of Los Angeles* (1998) 68 Cal.App.4th 1097, 1103 [80 Cal.Rptr.2d 720] (*Farnham*)). Each of these three factors militates in favor of immunity in this case.

First, the pathway constitutes a trail under accepted definitions because it is a paved pathway through a park, and a "path," as *Carroll, supra,* 60 Cal.App.4th at page 609, observed, is synonymous with a "trail." (See *ibid.* [dictionary definition of a trail as " 'a marked or established *path* or route . . . .' "]; *Treweek, supra,* 85 Cal.App.4th at p. 230 [a trail "consist[s] primarily of a path or track"]; compare *Treweek, supra,* at p. 230 [dictionary and judicial definitions did not suggest that a "ramp" was synonymous with a "trail"].)

Second, the pathway qualifies as a trail because it is designed and used for a recreational purpose, i.e., bringing a dog to an unleashed area of a dog park, a form of recreation for both dog and walker. (See generally *Armenio, supra,* 28 Cal.App.4th at p. 418 [the purpose for which trail is used "is ordinarily viewed as a factual issue, but it becomes a question of law if only one conclusion is possible"].) The pathway is indistinguishable in this regard from the paved paths found to be trails in other cases. (*Farnham, supra,* 68 Cal.App.4th at pp. 1099, 1102–1103 [bicycle path]; *Carroll, supra,* 60 Cal.App.4th at p. 607 [bike path]; *Armenio, supra,* 28 Cal.App.4th at pp. 415, 418 [path for walking, running, bike riding, and horseback riding].) This conclusion obtains whether the pathway is viewed as providing access to the recreational activity, or the activity is deemed to occur on the pathway itself. (*Treweek, supra,* 85 Cal.App.4th at pp. 224–229.) Plaintiff asserts that trails have heretofore been found to exist only in "remote areas," but the bicycle path deemed to be a trail in *Farnham, supra,* 68 Cal.App.4th at pages 1098–1099, could not have been too remote because it was located in the city of Los Angeles. Urban recreational areas fulfill many of the same purposes as remote areas. Neither public policy nor the statute suggests any such differentiation.

Third, the pathway should be treated as a trail to fulfill the purpose of the statute, because public entities could well be inclined to close dog parks if they were exposed to liability for accidents like the one here. (Cf. *Treweek, supra,* 85 Cal.App.4th at pp. 232–234 [municipality would be unlikely to close a ramp connecting a dock to a boat or a parking lot absent the extension of immunity].) As the court in *Farnham, supra,* 68 Cal.App.4th at page 1103, observed with respect to a paved bike path, while it is

"reasonable that users would expect a paved surface to be appropriately constructed and maintained," "the flip side . . . is the difficulty cities and counties might face in inspection and repair. Paved trails are subject to changing irregularity of surface conditions due to seismic movement, natural settlement, or stress from traffic. Additionally, the weather can cause dirt or sand to be blown on a trail, creating an unsafe surface for almost any user. Rocks, tree branches and other debris often find their way onto a trail. . . . In today's litigious society, it does not take a very large crystal ball to foresee the plethora of litigation cities or counties might face over bicycle paths . . . . The actual cost of such litigation, or even the specter of it, might well cause cities or counties to reconsider allowing the operation of a bicycle path . . . ." For all these same reasons, the purpose of the statute would be well served by the recognition of immunity here.

Plaintiff asserts that this pathway is a "sidewalk," and argues that a sidewalk cannot constitute a "trail" under section 831.4, subdivision (b), because subdivision (c) of the statute distinguishes between trails and sidewalks.[2] Subdivision (c) provides immunity for injuries caused by the condition of: "Any paved *trail, walkway, path, or sidewalk* on an easement of way which has been granted to a public entity, which easement provides access to any unimproved property, so long as such public entity shall reasonably attempt to provide adequate warnings of the existence of any condition of the paved *trail, walkway, path, or sidewalk* which constitutes a hazard to health or safety. Warnings required by this subdivision shall only be required where pathways are paved, and such requirement shall not be construed to be a standard of care for any unpaved pathways or roads." (Italics and underscoring added.)

Plaintiff believes that the pathway in this case can be shown to be a sidewalk simply by pronouncing it a sidewalk. She notes in her opening brief that her "[d]eclaration [in opposition to the motion for summary judgment] indicates multiple times that she considers the walkway a 'sidewalk.' . . . In addition, [her] accident reconstruction expert refers [in his declaration] to the walkway as a 'sidewalk' multiple times . . . . [Defendant] never objected to [p]laintiff['s] or [the expert's] use of the term sidewalk." But as the court in *Farnham, supra,* 68 Cal.4th at page 1103 observed: "An object is what it is. For example, an adjacent parking lot does not become a trail by the simple expedient of calling it a trail. The design and use will control what an object is, not the name."

██ A "sidewalk" is ordinarily defined as something that is next to, or part of, a street or highway. (Merriam-Webster's Collegiate Dict. (11th ed. 2004)

---

[2] All further references to subdivisions are to subdivisions of section 831.4.

p. 1158 [the usual meaning of "sidewalk" is that of a "paved walk for pedestrians at the side of a street"]; Black's Law Dict. (6th ed. 1990) p. 1381 [a sidewalk is "[t]hat part of a public street or highway designed for the use of pedestrians, being exclusively reserved for them, and constructed somewhat differently than other portions of the street"]; Veh. Code, § 555 [a sidewalk is "that portion of a highway, other than the roadway, set apart by curbs, barriers, markings or other delineation for pedestrian travel"]; Sts. & Hy. Code, § 5600 [defining a sidewalk, for purposes of the chapter on sidewalk maintenance, to include enumerated objects "in the area between the property line and the street line"]; see also *In re Devon C.* (2000) 79 Cal.App.4th 929, 932–933 [94 Cal.Rptr.2d 513] [minor riding a bicycle on a sidewalk was riding on a "street" within the meaning of bicycle helmet law].)

Paved paths in public parks have thus been distinguished from sidewalks if they were not located on or adjacent to a street or highway. (*Hoskinson v. City of Iowa City* (Iowa 2001) 621 N.W.2d 425, 426, 428–429 [appellant fell while walking his dog on an asphalt walkway in a city park; collecting cases from around the country construing the word "sidewalk" to refer to "a walkway that is a part of the street or is at or along the side of the street"]; *Stabley v. Park Authority* (1998) 228 Mich.Ct.App. 363 [579 N.W.2d 374, 375, 377–378] [rollerblade became wedged in crack on paved path in city park].) Here, since the pathway was not on or adjacent to a street or highway, it was not a sidewalk as that term is ordinarily defined.

The pathway could qualify as a "sidewalk" only under broader than ordinary definitions of the latter term as "a walk for foot passengers," "a foot pavement," or a "walkway." (Webster's 3d New Internat. Dict. (2002) pp. 2113, 2572 [defining "sidewalk" and "walkway"].) But to equate the words "sidewalk" and "walkway" would only reinforce defendant's argument that the words "trail, walkway, path, or sidewalk" in subdivision (c) have overlapping, not mutually exclusive, meanings. While the terms have different shades of meaning (Webster's 3d New Internat. Dict., *supra*, pp. 1654, 2113, 2423, 2572 [defining "path," "sidewalk," "trail," "walkway"]), they can overlap to some extent in common usage (Roget's Internat. Thesaurus (5th ed. 1992) § 383, p. 280 [terms are potentially synonymous]; Rodale, The Synonym Finder (1978) p. 1249 [same]). Case law has confirmed that overlap by equating the terms "trail" and "path" (*Carroll, supra*, 60 Cal.App.4th at p. 609), and has thereby implicitly rejected plaintiff's argument.

We note that plaintiff cannot even formulate an argument for mutual exclusivity of the terms in subdivision (c) without equating them herself. Plaintiff says that the "walkway" here was a "sidewalk," and we would agree

that "walkway" is probably the most natural term to use to describe the site of the accident. (Webster's 3d New Internat. Dict., *supra*, at p. 2572 [defining a "walkway" as "a path for pedestrians esp[ecially] in a garden or park"].) But if a sidewalk cannot be a "trail," then neither can it be a "walkway." This problem with plaintiff's argument helps to illustrate why the distinctions she proposes would be unworkable.

The difficulties with plaintiff's argument go beyond mere semantics. Legislative history indicates, contrary to plaintiff's argument, that subdivision (c), which was enacted after subdivisions (a) and (b) (see *Giannuzzi v. State of California* (1993) 17 Cal.App.4th 462, 466 [21 Cal.Rptr.2d 335] (*Giannuzzi*) [sequence of enactments]), was not intended to limit existing immunity in any way, but rather to expand it. (See Cal. Coastal Com., Enrolled Bill Rep. on Assem. Bill. No. 988 (1979–1980 Reg. Sess.) Sept. 18, 1979 [subd. (c) expands governmental tort immunity]; State Coastal Conservancy letter to Governor Edmund G. Brown, Jr. (1979–1980 Reg. Sess.) Sept. 17, 1979, Governor's chaptered bill files, ch. 1010 [same].) No intent to limit the meaning of a "trail" under subdivision (b) is apparent in the enactment of subdivision (c) of section 831.4.

Further, the language of subdivision (c), as a whole, does not support plaintiff's construction. While the terms "trail, walkway, path, or sidewalk" are listed in the disjunctive in the first sentence of subdivision (c), they are all subsumed in the subdivision's second sentence under the single term "pathways"—suggesting that the terms are broadly synonymous rather than mutually exclusive. The legislative history likewise suggests that the terms "trail, walkway, path, or sidewalk" were not used to draw fine distinctions, but rather to comprehensively define all of the "accessways" and "improved easements" that would be covered by subdivision (c). (See Sen. Republican Caucus, analysis of Assem. Bill No. 988 (1979–1980 Reg. Sess.) p. 1 ["The California Coastal Act of 1976 provides that public entities may accept offers to dedicate easements. However, proponents of this bill claim that because of budgetary constraints, these public entities are unwilling to accept such offers since existing law granting immunity from liability does not cover improved easements"]; State Coastal Conservancy, letter to Governor Edmund G. Brown, Jr. (1979–1980 Reg. Sess.) Sept. 17, 1979, Governor's chaptered bill files, ch. 1010 [immunity would be afforded in order to, among other things, "encourage local governments to take management responsibility for coastal accessways which are the subjects of present offers to dedicate," and "stimulate the provision of recreational accessways in non-coastal areas of the state as well"]; Assemblyman Kapiloff, sponsor of Assem. Bill No. 988 (1979–1980 Reg. Sess.), letter to Governor, Sept. 19, 1979, Governor's

chaptered bill files, ch. 1010 [law would encourage cities and counties to accept "the 300 or more dedications of coastal accessways which have been offered in connection with coastal development permits"].)

■ In sum, the pathway here can be deemed to be a trail under subdivision (b), even though it could also be characterized as a "walkway," a "path," or even, in the broadest sense of the term, a "sidewalk," within the meaning of subdivision (c). These terms in subdivision (c) are not mutually exclusive and do not limit the application of subdivision (b).

■ Plaintiff argues that whether the pathway is a trail is a triable issue of fact because she and her expert called it a sidewalk in their declarations, defendant's park manager called it a "walkway" in his declaration, and the contract for maintenance of Linda Park and other areas referred to upkeep of "sidewalks" and "other paved areas," rather than trails. However, no triable issue arises as to a property's status under the statute simply by virtue of what people may call it. As previously noted, "[a]n object is what it is," regardless of how it has been labeled. (See *Farnham, supra*, 68 Cal.App.4th at p. 1103.)

Plaintiff protests that our decision will "mean that every sidewalk in a public park is a trail," but no such broad pronouncement is implicit in our reasoning. Whether a particular property is a trail under section 831.4, subdivision (b) will depend, as we have said, on accepted definitions of the property, the purpose for which the property is used, and the purpose of the statute. While there might be situations in public parks where line drawing could be difficult, this is not one of them. We agree with the trial court that the pathway here is clearly a trail under the statute, notwithstanding plaintiff's arguments to the contrary.

### C. *Whether the Injury Was Caused by Conditions of the Trail*

Plaintiff contends that trail immunity does not apply because her injury was not caused by a condition of the trail. She maintains that the accident resulted from other dangerous conditions, allegedly unrelated to the trail, that defendant created, including: allowing dogs to run unleashed in the park; permitting debris to accumulate on the trail; failing to install a guardrail where the accident occurred; and locating the trail in a dangerous area, i.e., next to a slope onto which people could fall. However, even if a trier of fact could reasonably find that all of these conditions were dangerous and that each of

them substantially contributed to the accident,[3] they would not, either individually or collectively, create any liability here.

■ Plaintiff remarkably complains about defendant's policy of letting dogs off-leash—the very reason she frequented the park in the first place—but her argument in this regard is like the one rejected in *State of California v. Superior Court* (1995) 32 Cal.App.4th 325, 326–327 [39 Cal.Rptr.2d 1]. There, a horseback rider fell off her horse on a trail in a state park when the horse was " 'spooked' " by a mountain bicyclist, and she alleged that the park "was in a dangerous condition because its trails . . . were open for use by mountain-bike riders as well as equestrians." (*Ibid.*) The court observed that "a public entity is not liable for a dangerous condition of public property based on third party conduct alone," and that the state was "absolutely immune from liability for injuries caused by a physical defect of a trail." (*Id.* at pp. 327, 328.) Since there was no claim in that case that the trail itself was defective, the court held that there could be no recovery. (*Id.* at p. 329.) The same reasoning applies here. Defendant is not responsible for harm caused by third party actors such as plaintiff's own unleashed dog unless some unimmunized conduct on its part contributed to that harm.

■ Plaintiff's case thus hinges on her contention that trail immunity does not apply to the other dangerous conditions she identifies because those conditions were unrelated to the trail. It is well established that the immunity covers negligent maintenance of a trail, such as allowing accumulation of debris as alleged here. (*Astenius v. State of California* (2005) 126 Cal.App.4th 472, 474–475 [23 Cal.Rptr.3d 877] [rocks protruded onto trail in vehicular recreation area; surface of trail "was extremely rough and in poor condition"]; *Farnham, supra*, 68 Cal.App.4th at p. 1099 [outer pavement of bicycle path gave way causing appellant to be thrown into an adjacent ditch]; *Carroll, supra*, 60 Cal.App.4th at pp. 607–608 [crack in paved bicycle path]; *Armenio, supra*, 28 Cal.App.4th at p. 415 ["improper patching" of bicycle path]; *Giannuzzi, supra*, 17 Cal.App.4th at p. 464 [" 'large, loose dirt pilings' " on a vehicular recreation park trail].) Accordingly, defendant is not liable for the debris on the trail.

■ As for the absence of a handrail where the accident occurred,[4] we believe that, to fulfill its purpose, trail immunity must extend to claims arising from the design of a trail, as well as its maintenance. We presume that there are many miles of public trails on slopes in this state that could be made safer with handrails, and that handrails would perhaps enhance the safety of

---

[3] This assumption obviates the need to address plaintiff's contention that the court erred in sustaining defendant's objection to her expert's declaration on these subjects.

[4] The evidence shows that handrails were constructed along portions of the trail, but that the accident occurred at a point on the trail where no handrail was installed.

all trails, wherever located, that bear pedestrian traffic. But to require installation of handrails along every public trail where it might be reasonably prudent to do so would greatly undermine the immunity's objective of encouraging access to recreational areas, because " 'the burden and expense of putting such property in a safe condition and the expense of defending claims for injuries would probably cause many public entities to close such areas to public use.' " (*Armenio, supra,* 28 Cal.App.4th at p. 417.) While we would like to live in a world of resources sufficient to guarantee reasonable safety at all times, "users of recreational trails or bike paths generally understand the risk of injury inherent in the use of such pedestrian ways," and recognize that " '[a] large portion of the activities comprising modern public park and recreation programs . . . might well be curtailed, deferred or even completely eliminated if the risk of tort liability were to impose unduly large obligations upon the public treasury.' " (*Treweek, supra,* 85 Cal.App.4th at p. 234 & fn. 9.)

Plaintiff seeks to avoid the immunity by identifying the hill next to the trail, rather than the trail itself, as a dangerous condition, but this condition is not unrelated to the trail because the trail is what provides access to the hill and exposure to the alleged danger. Plaintiff is in effect arguing that the trail is situated in a dangerous location (see *Bonanno v. Central Contra Costa Transit Authority* (2003) 30 Cal.4th 139, 144 [132 Cal.Rptr.2d 341, 65 P.3d 807] [dangerous condition liability can be predicated on property's location]), but location, no less than design, is an integral feature of a trail, and both must be immunized for the same reasons. To accept plaintiff's argument would be to require installation of handrails or other safety devices on trails, or relocation of trails, whenever the surroundings could otherwise be considered unreasonably dangerous. The likely and unacceptable result, which the immunity was created to avoid, would be the closure of many trails in areas that could be deemed at all hazardous.

Plaintiff contends finally that trail immunity does not apply because defendant entered into a special relationship with her by undertaking to maintain the trail. This argument is improperly advanced for the first time on appeal, and, in any event, the immunity would preclude liability for any breach of the duty created by the alleged special relationship. (See *Davidson v. City of Westminster* (1982) 32 Cal.3d 197, 202 [185 Cal.Rptr. 252, 649 P.2d 894] ["immunity hurdles are not overcome by the existence of a special relationship"].) Otherwise, the special relationship argument would swallow up the absolute immunity promulgated by our Legislature.

## III. DISPOSITION

The judgment is affirmed.

Stein, J., and Swager, J., concurred.