Filed 2/28/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| SELLS CLYDE REED III,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CITY OF LOS ANGELES,<br><br>    Defendant and<br>    Respondent. | B294531<br><br>(Los Angeles County<br>Super. Ct. No. BC648140) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Christopher K. Lui, Judge.  Affirmed.

Law Office of Donald R. Hammond, Donald R. Hammond; Jeff Lewis Law, Jeffrey Lewis, and Sean C. Rotstan for Plaintiff and Appellant.

Michael N. Feuer, City Attorney, Blithe S. Bock, Assistant City Attorney, and Michael M. Walsh, Deputy City Attorney, for Defendant and Respondent.

_____

Sells Reed III sued the City of Los Angeles for injuries he sustained when he rode his bicycle into a rope attached to a badminton net stretched across a paved path in MacArthur Park.[1]  The trial court granted the City's motion for summary judgment on multiple independent grounds:  Reed's suit was barred by the doctrine of trail immunity (Gov. Code, § 831.4), no negligent or wrongful act or omission of a City employee caused the dangerous condition that injured Reed, and the City had no actual or constructive notice of the dangerous condition.[2]  We agree with the trial court that Reed's claims are barred by the doctrine of trail immunity.  Accordingly, we affirm.

## BACKGROUND

Reed was riding his bicycle on a paved path adjacent to a sports field in MacArthur Park at around 5:30 a.m. on September 12, 2015, when he rode into a rope attached to a badminton net and stretched across the path.  Reed fell backward off his bicycle and suffered various injuries as a result of the contact with the rope and the fall.  Reed alleged that individuals unrelated to the City had erected the badminton net, but that the individuals who did had done so frequently enough that the City either knew or should have known the net would be there the morning of Reed's incident.

Reed filed a complaint against the City alleging two causes of action:  (1) dangerous condition of public property (§ 835), and (2) public employee negligence.  The City filed a motion for summary judgment arguing that it was immune from liability

---

[1] The parties have described Reed as having been "clotheslined" by the rope.

[2] Further statutory references are to the Government Code.

2

based on the trail immunity doctrine (§ 831.4), and that even if it was not immune, it had no actual or constructive knowledge of the dangerous condition and the negligence claim is an improper cause of action.  The trial court agreed with the City as to each of the three grounds in its motion, granted the City's motion for summary judgment, and entered judgment for the City.

Reed filed a timely notice of appeal.

**DISCUSSION**

"A public entity[ or] public employee . . . is not liable for an injury caused by a condition of: [¶] (a) Any unpaved road which provides access to fishing, hunting, camping, hiking, riding, including animal and all types of vehicular riding, water sports, recreational or scenic areas and which is not a (1) city street or highway or (2) county, state or federal highway or (3) public street or highway of a joint highway district, boulevard district, bridge and highway district or similar district formed for the improvement or building of public streets or highways. [¶] (b) Any trail used for the above purposes."  (§ 831.4, subds. (a) & (b).)  "The trail immunity provided in subdivision (b) of the statute extends to trails that are used for the activities listed in subdivision (a), and to trails that are used solely for access to such activities.  [Citation.]  The immunity applies whether or not the trail is paved."[3]  (*Amberger-Warren v. City of Piedmont* (2006) 143 Cal.App.4th 1074, 1078 (*Amberger-Warren*).)

The trial court concluded Reed's claims were barred by the trail immunity doctrine and granted the City's motion for

---

[3] There is no dispute that the paved path on which Reed was riding his bicycle is a "trail" as that term is used in section 831.4.  The only question here is whether Reed's injuries were a result of the condition of the trail.

summary judgment on that ground.[4]  " 'We review the trial court's ruling on a summary judgment motion de novo, liberally construe the evidence in favor of the party opposing the motion, and resolve all doubts concerning the evidence in favor of the opponent.  [Citation.]  We must affirm a summary judgment if it is correct on any of the grounds asserted in the trial court, regardless of the trial court's stated reasons.' " (*Arvizu v. City of Pasadena* (2018) 21 Cal.App.5th 760, 763.)

Reed argues that courts have "found immunity to apply where an injury arises from the design or location of the trail but" not "where the injury was caused by a dangerous condition adjacent to the trail that is unrelated to the trail's purpose."  He relies on *Amberger-Warren*, *supra*, 143 Cal.App.4th 1074, as an example of immunity where injury arose from design or location of the trail and *Garcia v. American Golf Corp.* (2017) 11 Cal.App.5th 532 (*Garcia*), and *Toeppe v. City of San Diego* (2017) 13 Cal.App.5th 921 (*Toeppe*), as representative of cases where trail immunity did not exist because the injury resulted from conditions merely coincidentally adjacent to a trail.  As we explain, while we agree with Reed's statement of the law, we disagree with his assessment of the category into which his own case falls.

In *Amberger-Warren*, an unleashed dog bumped into the plaintiff and she slipped on some debris on the trail.  (*Amberger-Warren*, *supra*, 143 Cal.App.4th 1074, 1078.)  The plaintiff fell

---

[4] The trial court's ruling also addressed two other grounds upon which it could have relied to grant the City's motion for summary judgment.  Because we conclude the trail immunity doctrine is dispositive, we do not address the remaining independent grounds for summary judgment in the trial court's ruling.

backward and landed "part-way off" the trail.  (*Ibid.*)  To avoid
falling down an adjacent hill, she grabbed an exposed cement
edge, which injured her hand.  (*Ibid.*)  The plaintiff argued that
her injuries did not result from a condition of the trail, but rather
"from other dangerous conditions, allegedly unrelated to the trail,
that defendant created, including:  allowing dogs to run
unleashed in the park; permitting debris to accumulate on the
trail; failing to install a guardrail where the accident occurred;
and locating the trail in a dangerous area, i.e., next to a slope
onto which people could fall."  (*Id.* at p. 1083.)

Citing *State of California v. Superior Court* (1995) 32
Cal.App.4th 325, 326-327, the *Amberger-Warren* court reiterated
that " 'a public entity is not liable for a dangerous condition of
public property based on third party conduct alone[.]' "
(*Amberger-Warren*, *supra*, 143 Cal.App.4th at p. 1084.)  The
defendant in *Amberger-Warren* could not, therefore, be liable for
"harm caused by third party actors such as [an] unleashed dog
unless some unimmunized conduct on [defendant's] part
contributed to that harm."  (*Ibid.*)  The court also explained that
"[i]t is well-established that the immunity covers negligent
maintenance of a trail, such as allowing accumulation of debris
as alleged . . . ."  (*Ibid.*)

In *Garcia*, the minor plaintiff was hit by a golf ball as he
was being pushed in a stroller along the Rose Bowl Loop adjacent
to the Brookside Golf Course.  (*Garcia*, *supra*, 11 Cal.App.5th at
p. 537.)  *Garcia* explained that each of the conditions causing the
injury in *Amberger-Warren* were related entirely to the existence
of the trail—if the trail did not exist, the dangerous condition
would not have existed—and therefore those conditions were

5

immunized.[5] Conversely, "the danger posed by the Brookside Golf Course would exist even if the walkway did not; there would still be a danger of errant golf balls hitting motorists and recreational users of the Loop." (*Garcia*, at p. 546.)

In *Toeppe*, plaintiff was walking on a pathway through a public park when a branch fell off a tree and struck her. (*Toeppe*, *supra*, 13 Cal.App.5th at p. 924.) The *Toeppe* court employed a "relatedness" analysis similar to that in *Garcia*. The court identified the dangerous condition as a negligently maintained eucalyptus tree. "[U]nlike the dangerous condition of a hill in *Amberger-Warren* that could not be separated from the subject path, here, the dangerous condition (a negligently maintained eucalyptus tree) is independent of the trail through Mission Bay Park. It is possible for a visitor to the park to be injured by a falling tree whether she used the trail or simply walked across the grass and was struck by a falling branch." (*Toeppe*, at p. 928.) Further highlighting the distinction, the *Toeppe* court explained that two of the dangerous conditions in *Amberger-Warren* were "lack of handrails on the path and the hill on which the path crossed." (*Toeppe*, at p. 928.) If the defendant in that case were not immune, the conditions would require redesigning the path. (*Id.* at p. 929.) In contrast, "[h]ere, the dangerous condition does not require the City to improve the trail or alter its design whatsoever. Toeppe has not alleged that a safety barrier needs to be added to the trail or that the trail must follow a

---

[5] *Garcia* also based its holding, in part, on the fact that the golf course was a commercial enterprise "that earned profits that could be used for maintenance, safety features, and insurance, and for paying lawyers and judgments." (*Garcia*, *supra*, 11 Cal.App.5th at p. 544.)

different path.  Indeed, Toeppe's claim of a dangerous condition does not involve the trail whatsoever." (*Ibid.*)

In *Garcia*, there was no immunity because golf balls escaping the golf course would have been dangerous to any passerby, not just those using the trail.  In *Toeppe*, there was no immunity because the negligently maintained eucalyptus tree was dangerous to anyone in its vicinity, not just those using the path.

We conclude this case is most analogous to *Leyva v. Crockett & Co., Inc.* (2017) 7 Cal.App.5th 1105—another golf ball case.  In *Leyva*, a golf ball struck the plaintiff in his eye as he walked along a trail adjacent to a golf course.  (*Id.* at p. 1107.)  In *Leyva*, golf balls escaping the golf course posed a danger only to the trail's users.  "The condition of the golf course [in *Leyva*] could not be dangerous but for the trails." (*Garcia*, *supra*, 11 Cal.App.5th at p. 546.)  The *Garcia* court distinguished *Leyva* because "the danger posed by the Brookside Golf Course [in the *Garcia* case] would exist even if the walkway did not; there would still be a danger of errant golf balls hitting motorists and recreational users of the Loop." (*Ibid.*)

A badminton net is not a dangerous object in its ordinary context.  But a badminton net stretched across a trail may create a dangerous condition.  That is only true because it impedes the regular use of the trail.[6]  Because the danger here is inherently

—————————

[6] The City's behavior Reed complains of is failure to take measures to protect people using the trail from the dangerous condition—the badminton net—by regularly inspecting and "willfully refus[ing] to take any action to remedy or abate the danger."  At its core, the complaint is that the City failed to properly maintain the trail.  "It is well-established that the

7

connected to and exists only because of its connection with the trail, we conclude the doctrine of trail immunity bars Reed's claims against the City and its employees.

## DISPOSITION

The judgment is affirmed. Respondent is awarded costs on appeal.

CERTIFIED FOR PUBLICATION


CHANEY, J.

We concur:


ROTHSCHILD, P. J.


BENDIX, J.

---

immunity covers negligent maintenance of a trail . . . ." (*Amberger-Warren*, *supra*, 143 Cal.App.4th at p. 1084.)