Filed 4/19/24; certified for publication 5/13/24 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| BRADY HELM,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CITY OF LOS ANGELES et al.,<br><br>    Defendants and Respondents. | D083075<br><br><br><br>(Super. Ct. No.<br>ICSICVCV202066094) |

APPEAL from a judgment of the Superior Court of Inyo County, Susanne Rizo, Judge.  Affirmed.

William Iagmin and Jon R. Williams; Lyfe Law, Sam Tabibian, and Shabnam Sarani, for Plaintiff and Appellant.

Porter Scott, Carl L. Fessenden, Thomas L. Riordan, and Matthew W. Gross, for Defendants and Respondents.

Brady Helm tripped and fell on a wire cable while walking to a recreational area at Diaz Lake.  That wire cable was suspended between two wooden poles and was intended to prevent vehicles from accessing a pedestrian pathway.  Helm brought suit against, among others, the County of Inyo (County) and the City of Los Angeles (City; County and City, together

Respondents), alleging causes of action for dangerous condition on public property, premises liability, and negligence. Respondents prevailed on summary judgment, arguing that Helm tripped while walking along a trail, and thus, they were immune under Government Code[1] section 831.4 (trail immunity).

Helm appeals the ensuing final judgment following Respondents' successful motion for summary judgment. To this end, Helm contends: (1) trail immunity does not apply here; and (2) disputed questions of material facts exist regarding the alleged dangerous condition of the subject public property. We disagree with Helm's first contention and conclude the trial court did not err in granting Respondents' motion for summary judgment because trail immunity barred Helm's claims. As such, we affirm the judgment.[2]

FACTUAL AND PROCEDURAL BACKGROUND

The City owns Diaz Lake, but the County maintains the lake as well as a surrounding campground. Around 2015, the County installed numerous 18 to 24 inch discarded wooden telephone posts around Diaz Lake to create a defined barrier between the area of vehicular traffic and the trails down to the lake. People may camp in designated areas or utilize the day-use area. The day-use area has a beach and is used for fishing, hiking, swimming, picnicking, and other recreational activities. The wooden posts, most of which are placed about two feet from each other, serve the purpose of

---

[1] Statutory references are to the Government Code unless otherwise specified.

[2] Because we conclude that Respondents are immune from liability under section 831.4, we do not reach Helm's arguments concerning whether the wire cable suspended between the two wooden posts was a dangerous condition.

preventing unauthorized vehicle traffic venturing into nondesignated areas, including near the shore of the lake. However, the wooden posts were not installed to prevent foot traffic from accessing the lake (people can easily walk around them). At a certain section of the road, two posts were somewhat further apart, separated by about eight to 10 feet, but spanned by a wire cable that can be unlocked by park personnel when they need to drive a vehicle down to the lake shore for maintenance or repair activities.

To access the day-use area, there is a defined walking trail that leads from the parking area to the water's edge. People can use that trail to access the available recreational activities at Diaz Lake and hike along the trail. No vehicles or watercraft are allowed down the trail to the lake in the day-use area. People using the day-use area are only allowed to access the lake from the parking area by foot.

On July 3, 2020, at about 5:30 p.m., Helm and his girlfriend followed the road around Diaz Lake and drove around the east and west sides before stopping at the east side of the lake. Helm stopped near the day-use area of the lake, so that he could let his dogs swim. He parked his vehicle on the unpaved road about six to eight feet away from the wooden posts and cable.

According to Helm, there existed "three pathways that led down towards the little beach area and the water. The first one had major erosion and a drop-off that [he] would not feel comfortable going down; the second one was overgrown and didn't look like it had that much usage, and also had a wood area that didn't look too friendly; and the third one looked to be the best option to walk down the pathway to the water, so that's where [they] stopped." This third option, which Helm chose, had two wooden posts with a wire cable suspended between them. They were located toward the top of the pathway. Helm believed this path was the best option to take to the lake

because "[it] had a more pronounced kind of a trail outline that you could see where it had been utilized where, like I said, the other two did not look utilized as much and had some access issues" and the pathway "was more clearly defined, not overgrown with weeds and didn't have an erosion ditch in it like the other ones." Helm exited the truck, put the leash on one of his dogs, and placed the dog on the ground. His girlfriend grabbed the other dog and followed behind. The leash Helm used was about four to six feet long.

Helm's destination was the day-use beach at the bottom of the trail. A dirt path runs between the wooden posts down to the beach and lake. The ground is made of compressed dirt and has a gentle slope that grades down toward the lake. The day-use area has a sandy beach section and multiple picnic tables with seating areas near the water. The wooden posts, suspended cable, and trail are shown in the picture below.



As Helm walked toward the wooden posts and cable, his dog, a corgi, walked about six inches in front of him and about one and a half to two feet from his side. Helm's left hand held the leash and his right hand was free. Helm said he saw the two wooden posts in the ground but did not see the cable between the posts. However, he did notice "the trail in between them" and he further described this trail as "the walk path down to the beach."

Helm was looking at the lake and not at the ground when he approached the wooden posts and cable. Once Helm reached the wooden posts and cable, he felt the cable limit his ability to lift up his left foot. Helm's right foot was still behind the cable and had not stepped over it. Helm then "kind of tried to hop off [his] right foot to get over the cable or just to catch [himself]." Unfortunately, he fell on his left hand and side. At that time, the cable was high enough that Helm's corgi had already walked underneath the cable before the fall. After he fell, Helm determined that the cause of his accident was "[a] gray thin cable stretched across the walk path two inches off the ground."

Subsequently, Helm filed a claim of public liability against the City, County, and the State of California. The County and the State denied the claim.[3] Helm then filed suit, alleging causes of action of dangerous conditions of public property, premises liability, and negligence. After answering the complaint, Respondents filed a motion for summary judgment, arguing trail immunity applied, the wooden poles connected by the wire cable did not constitute a dangerous condition, and Respondents had no notice of any dangerous condition.

---

[3]    It is not clear from the record whether the City responded to Helm's claim.

Helm opposed the motion for summary judgment, contending trail immunity did not apply and there existed a dangerous condition on public property.

After considering the motion, opposition, and supporting documents as well as entertaining oral argument, the trial court granted Respondents' motion for summary judgment. In doing so, the court found that Respondents were immune from liability under section 831.4. Specifically, the court determined that the area where Helm fell was a trail for purposes of section 831.4 and the wooden poles and wire cable were incorporated into the design of the trail.

The court subsequently entered a judgment of dismissal of Helm's complaint against Respondents. Helm timely filed a notice of appeal.

DISCUSSION

"On appeal after a motion for summary judgment has been granted, we review the record de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.) A motion for summary judgment "should be granted if no triable issue exists as to any material fact and the defendant is entitled to a judgment as a matter of law." (*Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1002–1003, citing Code Civ. Proc., § 437c, subd. (c).) "In performing our de novo review, we view the evidence in the light most favorable to plaintiffs as the losing parties." (*Wiener v. Southcoast Childcare Centers, Inc.* (2003) 32 Cal.4th 1138, 1142.) "[W]e liberally construe plaintiffs' evidentiary submissions and strictly scrutinize defendant's own evidence, in order to resolve any evidentiary doubts or ambiguities in plaintiffs' favor." (*Ibid.*)

Helm's complaint alleges three causes of action, all of which are contingent on Helm tripping on the cable between the two wooden posts. The trial court found that Respondents were immune from liability under section 831.4 based on Helm tripping on the cable. Helm contends that Respondents are not entitled to trail immunity pursuant to section 831.4 under the facts of this case. Specifically, he states there is a disputed material fact whether he tripped while walking on a trail. Additionally, he argues the wooden poles and wire cable were not an integral feature of any trail.

" 'A public entity is generally liable for an injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury and the public entity had actual or constructive notice of the dangerous condition.' " (*Loeb v. County of San*

*Diego* (2019) 43 Cal.App.5th 421, 431 (*Loeb*).)  However, the recreational trail immunity statute, section 831.4, provides that a public entity "is not liable for an injury caused by a condition of" the following:  "(a) Any unpaved road which provides access to fishing, hunting, camping, hiking, riding, including animal and all types of vehicular riding, water sports, recreational or scenic areas;" or "(b) Any trail used for the above purposes."  (§ 831.4, subds. (a) & (b).)[4]  "[S]ubdivisions (a) and (b) should be read together such that immunity attaches to trails providing access to recreational activities as well as to trails on which those recreational activities take place."  (*Lee v. Department of Parks & Recreation* (2019) 38 Cal.App.5th 206, 211 (*Lee*).)

" ' "The plainly stated purpose of immunity for recreational activities on public land is to encourage public entities to open their property for public recreational use, because 'the burden and expense of putting such property in a safe condition and the expense of defending claims for injuries would probably cause many public entities to close such areas to public use.' " ' " (*Loeb*, *supra*, 43 Cal.App.5th at p. 431.)  "Trail immunity applies to all manner of defects in the trail's condition."  (*Ibid.*; see *Amberger-Warren v. City of Piedmont* (2006) 143 Cal.App.4th 1074, 1084 (*Amberger-Warren*) ["It is well-established that the immunity covers negligent maintenance of a trail"]; *Treweek v. City of Napa* (2000) 85 Cal.App.4th 221, 227 [" 'It is . . . clear that the state is absolutely immune from liability for injuries caused by a physical defect of a trail' "].)

" 'Whether a property is considered a "trail" under section 831.4 turns on "a number of considerations," including (1) the accepted definitions of the

_____

4    Helm argues that Respondents did not claim immunity under section 831.4, subdivision (a) below.  He is incorrect as Respondents explicitly moved for summary judgment based upon their argument that they "are entitled to trail immunity under . . . section 831.4[, subdivision] (a)."

property, (2) the purpose for which the property is designed and used, and (3) the purpose of the immunity statute.' (*Lee*, *supra*, 38 Cal.App.5th at p. 211, quoting *Amberger-Warren*, *supra*, 143 Cal.App.4th at pp. 1077–1079 [extending trail immunity to 'a paved pathway in an urban park setting'].) Although this ' "is ordinarily viewed as an issue of fact [citation], it becomes one of law if only one conclusion is possible." ' " (*Loeb*, *supra*, 43 Cal.App.5th at pp. 431–432.) Below, the trial court utilized these factors to determine that Helm was injured on a trail. Surprisingly, in his opening brief, Helm does not address these factors or explain how the trial court misapplied them whatsoever. We view his failure to engage in this necessary analysis as a tacit admission that he cannot show error as to this issue. Our independent review of the evidence buttresses this conclusion because the undisputed facts concerning the pathway on which Helm fell satisfy each factor.

First, during his deposition, Helm referred to the area on which he was accessing when he fell as a "pathway" as well as a "trail." Moreover, he described the pathway as having "a more pronounced kind of trail outline that [he] could see where it had been utilized," and he explained the path "was more clearly defined, not overgrown with weeds and didn't have an erosion ditch in it like the other ones." In addition, Respondents offered evidence that the pathway on which Helm fell was a trail that the pedestrians could use to access the beach area around Diaz Lake.

In his opening brief, Helm attempts to characterize his testimony as establishing "that he fell at the perimeter of the roadway while attempting to traverse between two wooden posts." Yet, in making this argument, Helm ignores critical aspects of his testimony, namely that he tripped over the wire cable as he was attempting to access "the walk path down to the beach." Indeed, he testified at his deposition as follows:

9

"Q   What did you think when you saw the two wooden posts that were further spread out from all of the other wooden posts?

"A   I noticed the trail in between them.

"Q   But beyond the trail past those—the wide wooden posts, there was nothing else that you sort of observed about the two wider posts?

"A   Only that it was the walk path down to the beach."

Further, in describing the path he was going to take to the lake, he agreed that it was where the wooden posts and wire cable were located:

> "Q  And the third option, the best option as you described it, is that where those two wooden posts are with the cable where you tripped?
>
> "A  Yes."

Thus, Helm's own testimony establishes that he observed a trail between the two wooden posts connected by a wire cable and that he tried to access the trail by walking between the posts. Unfortunately, he did not see the wire cable and tripped over it while trying to access the trail to the lake. In other words, he was attempting to travel down the trail to the lake when he tripped and fell.[5]

There is no factual dispute that the second factor is satisfied because the evidence conclusively established that the pathway was designed for recreational use. Indeed, Helm testified that he intended to use the path to access the beach next to the lake. And he testified that it appeared that others had similarly used the path for the same purpose. Such testimony is consistent with the evidence Respondents offered that people use the

---

[5]  In the opening brief, Helm asserts that "[t]he area where Helm fell was admitted by [Respondents] to be part of an improved roadway for vehicles and not part of a path." In support of this assertion, Helm cites to two pages of the record, neither of which support his argument. It is not our role to scour the record to find evidence to support Helm's contention or create a triable issue of fact. That burden is Helm's alone. (See *Lewis v. County of Sacramento* (2001) 93 Cal.App.4th 107, 116 (*Lewis*) ["[D]e novo review does not obligate us to cull the record for the benefit of the appellant in order to attempt to uncover the requisite triable issues. As with an appeal from any judgment, it is the appellant's responsibility to affirmatively demonstrate error . . . "].)

11

pathway to access the beachfront of the lake and engage in recreational activities.

And the purpose of the trail immunity statute supports the conclusion that the subject pathway to the lake was a trail. The "paramount purpose" of section 831.4 "is keeping recreational areas open to the public by preventing burdens and costs on public entities." (*Lee, supra*, 38 Cal.App.5th at p. 214; see *Amberger-Warren, supra*, 143 Cal.App.4th at pp. 1077, 1079 [concluding that "a paved pathway in an urban park setting" "should be treated as a trail to fulfill the purpose of the statute, because public entities could well be inclined to close dog parks if they were exposed to liability for accidents like the one here"].) Here, the pathway allowed people to more easily access the beach along Diaz Lake where they could engage in water based recreational activities. Thus, treating the pathway as a trail under section 831.4 satisfies the purpose of that statute.

Having determined that Helm was injured while accessing a trail, we next consider whether the wooden poles and wire cable were integral parts of that trail. As discussed *ante*, the purpose of section 831.4 " ' " 'is to encourage public entities to open their property for public recreational use, because "the burden and expense of putting such property in a safe condition and the expense of defending claims for injuries would probably cause many public entities to close such areas to public use." ' " ' " (*Nealy v. County of Orange* (2020) 54 Cal.App.5th 594, 602–603.) Consistent with this purpose, trail immunity covers claims arising not just from a trail's physical condition but also its design and location, which are " ' "integral feature[s] of a trail." ' " (*Id.* at p. 603.) Also consistent with this purpose, the relevant focus is on whether a condition of the trail caused the injury, regardless of whether the injury was sustained while the plaintiff was on the trail. (Compare, e.g.,

12

*Toeppe v. City of San Diego* (2017) 13 Cal.App.5th 921, 924 (*Toeppe*) [no trail immunity where plaintiff hit by falling tree branch that was not part of any trail], with *Prokop, supra,* 150 Cal.App.4th at pp. 1335, 1341–1342 [trail immunity where plaintiff collided with chain link fence after exiting bike path].)

In concluding that trail immunity applied, the trial court relied mostly on *Prokop*. Helm argues that case is not instructive here. We disagree.

In *Prokop*, the plaintiff sued a city after he suffered injuries while bicycling on a public bikeway designed by that city. (*Prokop, supra,* 150 Cal.App.4th at p. 1335.) While cycling off the bikeway, the plaintiff ignored messages painted on the pavement that said, "WALK BIKE" and he collided with a chain link fence. (*Ibid*.) The trial court granted summary judgment for the defendant, finding the city was immune under section 831.4. (*Prokop,* at p. 1336.) The plaintiff appealed, arguing, in part, his injury was caused by the design of the bicycle gate rather than the condition of the bikeway. (*Id*. at p. 1341.) The court rejected this argument and followed *Amberger–Warren*, concluding the " 'condition' of" the bikeway included the design of the bicycle gate. (*Prokop,* at pp. 1341–1342.) The court also rejected the plaintiff's argument that trail immunity did not apply because the accident did not occur on the bikeway itself. Thus, the court determined that the "gateway to or from a bike path is patently an integral part of the bike path." (*Id*. at p. 1342, citing *Amberger–Warren, supra,* 143 Cal.App.4th at p. 1085.)

Helm points out that the court in *Prokop* applied trail immunity because the bike path, the accompanying chain link fence, and its nearby gateway were all determined to be part of the integrated design of the trail. (*Prokop, supra,* 150 Cal.App.4th at pp. 1341–1342.) He then argues that the cable wire in the instant matter was not an integrated part of any trail

13

because its stated purpose was to confine vehicular traffic to the roadway. We fail to see how this stated purpose helps Helm's argument here. The undisputed evidence was that the purpose of the wooden poles and the cable was to prevent vehicles using the pathway to access the lake. There was no intention for those same poles and cable to prohibit people from using the pathway to access the lake. Indeed, as Helm represented in his opposition below, "[t]he cable wire was strung . . . to prevent vehicles from driving through the wider set wooden posts to access the lake from the roadway and parking lot." Thus, the undisputed evidence establishes that the poles and cable stretched across one of the access ways to the pathway to the lake, which, as the trial court concluded, "is similar to the fence in *Prokup*." In this sense, the wooden poles and wire cable were installed to create a defined barrier and delineate the trails to the lake.[6] In addition, they increased safety for people walking along the pathway so that they would not have to worry about being struck by a vehicle driving down that pathway. Against this background, it is apparent that the wooden poles and wire cable were

---

[6]    In his reply brief, for the first time, Helm claims that the wooden poles and cables were not only intended to prohibit vehicles from accessing the pathway to the lake but pedestrians as well. Therefore, he asserts that trail immunity cannot apply because he was injured by "*a man-made condition not integrated into the design of any trial, but installed instead with the sole intention of preventing the area in question from being used as an access trail in the first place.*" We summarily reject this argument on two grounds. First, we typically do not consider arguments raised for the first time in a reply brief. (See *Varjabedian v. City of Madera* (1977) 20 Cal.3d 285, 295, fn. 11.) Second, Helm provides no citation to the record indicating any evidentiary support for his new assertion. To the contrary, the undisputed evidence appears to be that the wooden poles and cables were not intended to prohibit pedestrians from accessing the path.

integral components of the pathway to the lake.[7] Accordingly, the trial court did not err in applying trail immunity and granting Respondents' motion for summary judgment.

In addition, our analysis does not change when we consider *Toeppe*, *supra*, 13 Cal.App.5th 921 as Helm urges us to do. In that case, the plaintiff was walking through a public park when a branch fell off a eucalyptus tree and struck her. (*Toeppe, supra*, 13 Cal.App.5th at p. 924.) The trial court granted the defendant's motion for summary judgment under the theory that trail immunity applied. (*Id*. at pp. 924–925.) One of the grounds on which we reversed judgment was our conclusion that a disputed fact existed regarding where the plaintiff stood when she was injured. (*Id*. at p. 932.) To this end, we noted that the defendant offered deposition testimony and declarations that the plaintiff was standing on a paved trail in the public park when the tree branch fell on her. (*Id*. at pp. 931–932.) However, the plaintiff provided evidence, through her own declaration as well as a declaration from an expert witness, that she was not on a trail but instead, was standing on a grassy area in the park. Further, we noted that evidence was offered that the tree from which the branch fell was some 25 feet away from the paved trail and the length of the branch that struck the plaintiff was about 10 feet long, suggesting that the branch struck the plaintiff some 15 feet from the paved trail. (*Id*. at p. 932.) As such, we determined that there was a disputed fact regarding whether the plaintiff was on the paved trail at the time she was injured.

---

[7]    Helm claims the County admitted that the cable wire was not an integrated part of any trail. However, his citation to the record does not support his contention. We are not obligated to review the record to find evidence creating a disputed fact to support Helm's arguments here. (See *Lewis, supra,* 93 Cal.App.4th at p. 116.)

15

Here, no analogous factual dispute exists.  There is no disagreement regarding where Helm fell.  He tripped over the wire cable as he was attempting to access the pathway to the lake.  Helm cannot manufacture a disputed material fact by now referring to the area where he fell as "the perimeter of the roadway."

Nor can Helm create a disputed issue of material fact by simply referring to, without any explanation or analysis, his expert's declarations in which one refers to the area where Helm tripped and fell as a "parking lot" and the other claims that the area "does not meet the definition as a trail as defined by the Access Board."[8]  As we discussed *ante*, courts typically consider three factors to determine whether a property is a trail for purposes of section 831.4.  (*Lee, supra*, 38 Cal.App.5th at p. 211.)  Helm, however, does not explain how these two declarations should impact our analysis under the relevant factors.  He also does not cite any authority to support his position.  This is insufficient to show error, even when we are employing a de novo review.  (See *Claudio v. Regents of University of California* (2005) 134 Cal.App.4th 224, 230 [" 'As with an appeal from any judgment, it is the appellant's responsibility to affirmatively demonstrate error and, therefore, to point out the triable issues the appellant claims are present by citation to the record and any supporting authority.  In other words, review is limited to issues which have been adequately raised and briefed' "]; *Christoff v. Union Pacific Railroad Co.* (2005) 134 Cal.App.4th 118, 125 [even under de novo summary judgment review, our review is limited to issues adequately raised and supported in the appellant's brief].)

---

[8]	Helm represents that the Access Board is the federal agency that develops the standards under the Americans with Disabilities Act (42 U.S.C. § 12101 et seq.).

16

In short, in *Toeppe,* we found it significant that the parties disputed where the plaintiff was located when she was injured. (*Toeppe*, *supra*, 13 Cal.App.5th at p. 932.) Here, there is no similar dispute. The parties all agree where Helm was located when he tripped and fell. They just refer to that area by different names. A party's self-serving label does not create a material disputed fact capable of defeating a motion of summary judgment.[9]

DISPOSITION

The judgment is affirmed. Respondents are entitled to their costs on appeal.

KELETY, J.

WE CONCUR:


O'ROURKE, Acting P. J.


RUBIN, J.

---

[9] In *Toeppe,* we also determined that trail immunity did not apply because the plaintiff was injured by a falling branch from an allegedly negligently maintained eucalyptus tree. (*Toeppe*, *supra*, 13 Cal.App.5th at p. 931.) To the extent Helm also claims that the wooden poles and wire cable here are the same as the tree branch in *Toeppe,* we summarily reject that analogy.

17

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| BRADY HELM, | D083075 |
| Plaintiff and Appellant, | (Super. Ct. No. ICSICVCV202066094) |
| v. | |
| CITY OF LOS ANGELES et al., | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendants and Respondents. | |

THE COURT:

The opinion in this case filed April 19, 2024 was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request pursuant to rule 8.1120(a) for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page one of said opinion be deleted and the opinion herein be published in the Official Reports.

O'ROURKE, Acting P. J.

Copies to:  All parties

2