Filed 8/24/20; Certified for Publication 9/14/20 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SEAN NEALY, | |
| Plaintiff and Appellant, | G058036 |
| v. | (Super. Ct. No. 30-2018-01036469) |
| COUNTY OF ORANGE, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Gregory H. Lewis, Judge.  Affirmed.

Lenze Lawyers,  Jennifer A. Lenze and Amanda D. McGee, for Plaintiff and Appellant.

Koeller, Nebeker, Carlson, & Haluck, William L. Haluck and Gregory K. Koeller, for Defendant and Respondent.

Plaintiff Sean Nealy appeals from a judgment in favor of defendant and respondent County of Orange (County), entered after the trial court sustained County's demurrer to plaintiff's first amended complaint (FAC) without leave to amend and dismissed the matter with prejudice. The issue in this recreational use of public property case is whether the trial court properly sustained the demurrer on the grounds that County was immune from liability under Government Code section 831.4 (undesignated statutory references are to the Government Code). We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

In reviewing a sustained demurrer, we "accept the truth of material facts properly pleaded in the operative complaint, but not contentions, deductions, or conclusions of fact or law." (*Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 924 (*Yvanova*).) As such, "[w]e are limited to the material facts well pled in both the first amended and the initial complaint." (*State of California v. Superior Court* (1995) 32 Cal.App.4th 325, 326 (*Young*).) We may also look to exhibits attached to the complaint for operative facts. (*Building Permit Consultants, Inc. v. Mazur* (2004) 122 Cal.App.4th 1400, 1409 (*Mazur*).) And because the "allegations that we accept as true necessarily include the contents of any exhibits attached to the complaint, . . . in the event of a conflict between the pleading and an exhibit, the facts contained in the exhibit take precedence over and supersede any inconsistent or contrary allegations in the pleading." (*Jibilian v. Franchise Tax Bd.* (2006) 136 Cal.App.4th 862, 864, fn. 1 (*Jibilian*).)[1]

---

[1] Both parties refer to additional facts not found in plaintiff's complaints and exhibits. For example, they assert facts set forth in trial court briefs, arguments made before that court, and even factual matters purportedly obtained through interrogatories. That these documents are in the appellate record does not mean we may consider their contents. In reviewing a trial court's ruling sustaining a demurrer, our focus is limited to the facts alleged on the face of the pleading and its exhibits, and any facts subject to judicial notice. (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126 (*Zelig*).) Neither party has requested judicial notice.

Wagon Wheel Canyon Loop Trail (the Trail) is located in Thomas F. Riley Wilderness Park (the Park), a public park owned and operated by County. The Park is a 544 acre public wilderness area with five miles of multiuse trails for hikers, equestrians, and bicyclists. One of them is the Trail, a 2.7 mile long loop trail located inside the Park used for hiking and bicycling.

Before the incident at issue in this case, a wooden lodgepole fence ran perpendicularly across the mid-point of the eastern half of the Trail loop. It served as an entrance and exit for the Trail, and created a physical barrier cyclists had to maneuver around when riding either north or south on the Trail. Plaintiff "had ridden his bicycle on and along [the Trail] several times in the past, [and] knew of the existence of the [perpendicular] wooden lodgepole fence . . . and knew that the fence created a barrier. . . ."

At some point unknown to plaintiff, the lodgepole fence was replaced with new fencing, which consisted of wooden fenceposts or "pylons" between which were strung horizontal, gray colored wire cables.[2] Exhibit A in the FAC photographically depicted two views of this new fence. (Copies of these two photos are attached below as

_____

[2] In the FAC, plaintiff alleged the original lodgepole fence was "*not on* the physical trail itself," and the new wire cable fence "was installed at the exact location where the wooden lodgepole [fence] had previously been—perpendicular to, but *not actually located on*" the Trail. (Italics added.) However, in his original complaint, plaintiff had stated the original lodgepole fence was "*in* the [T]rail," and the new fence was "at the same location." (Italics added.) Moreover, in exhibit A of his original complaint, "Claim for Money or Damages Against the County of Orange," plaintiff stated "a new fence was erected *on* a multi-use path that has visible pylons," and that "I was riding my bike *on the above path* when I struck the invisible fence." (Italics added.) The trial court correctly determined that, under the sham pleadings doctrine, a plaintiff cannot avoid the original complaint's harmful allegations by merely filing an amended complaint omitting or changing them. (See *Zakk v. Diesel* (2019) 33 Cal.App.5th 431, 447; cf. *Smyth v. Berman* (2019) 31 Cal.App.5th 183, 196-197 [the grant of leave to amend does not include leave to amend to plead inconsistent allegations].) He has abandoned this argument on appeal, stating, "Plaintiff is not disputing the gray cable fence is present *on* the [Trail]." (Italics added.)

an appendix to this decision.)  The photos showed ten wooden fenceposts set in concrete, through which five gray colored cables were strung.  This new fence was constructed on the Trail, and ran perpendicularly across it.  The photos were taken from a vantage point north of the new fence, showing the southern segment of the Trail in the background as it terminated at the new fence.  Gray colored "loose gravel" was placed below and around the new fencing and "cover[ed] the ground in the surrounding area."

The photos also showed the same type of wire-cable fencing running *parallel* to the Trail along its western edge, extending southward back up the Trail until foliage blocked further view.  This parallel fencing continued northward along the western boundary of the Trail, past the new perpendicular fence, and toward the northern segment of the Trail.  No photos were submitted to show a view of the northern portion of the Trail or fencing, if any.

Like the original lodgepole fence, the new perpendicular fence "divided" the southern and northern portions of the Trail loop, "separating each direction of travel." However, one of the photos showed the new fence actually ended *before* it reached the boundary of the Trail, and that there was an opening between the fence's western-most post and the parallel fencing at the western edge of the Trail.[3]  The photo showed the

---

[3] Neither the pleadings nor exhibit A's photos established how far *east* the new fence ran, so we do not know whether or how the Trail was affected at the *eastern* end of the new fence.

opening was large enough to permit pedestrians and cyclists to pass around the new fence when going from one portion of the Trail to the other.[4]

Plaintiff, an experienced cyclist, was riding his bicycle on the Trail, traveling southbound on the northern portion of the Trail loop, and intending to continue on to the southern portion. Plaintiff noticed the old wooden lodgepole fence had been removed. He did not see the wire cables strung between the new fenceposts. He mistakenly believed he could ride between the fenceposts now traversing the Trail, and decided to ride "directly between the posts" of the new fence. "[H]e figured the cross logs [from the old lodgepole fence] were removed with the posts remaining," and thought "he could ride directly between the posts." Instead, plaintiff rode his bicycle directly into the wire cables, where he was thrown over the handlebars and onto the ground, resulting in serious injuries.

Plaintiff filed his original complaint against County alleging two causes of action: "(1) Negligence (Premises Liability)"; and "(2) Dangerous Condition of Public Property." County demurred, asserting plaintiff's claims were barred both by section 831.4's "trail immunity" and section 831.7's "hazardous activity immunity." The court sustained the demurrer based on trail immunity, finding the new fencing was a "condition" of the Trail for which County was statutorily immune. It granted plaintiff leave to amend.

---

[4] This is contrary to plaintiff's assertion in his FAC that the new fencing "provided no access to the [T]rail, including ingress to and/or from the [T]rail. . . ." Plaintiff's photos of the fence show the opening in the new fence is sufficient for bicycle access to and from the two divided portions of the Trail loop. Indeed, the opening appears large enough to drive an automobile through. As noted, because facts shown by exhibits attached to the complaint are given precedence over contrary allegations in the pleadings, we consider the photos in exhibit A more accurately depict the physical details of the new fence. (*Jibilian, supra*, 136 Cal.App.4th at p. 864, fn. 1; *Mazur, supra*, 122 Cal.App.4th at p. 1409.)

Plaintiff filed a FAC, alleging the same two causes of action. As noted, the FAC included as its exhibit A the two photos of the new fence referenced above. It also included an exhibit B, a set of plans for the "Wagon Wheel Creek Restoration And Stormwater Management" restoration project for Wagon Wheel Creek, which included planned modifications to the area of the Trail where the new fence was located.[5] County demurred again on the same two grounds. Plaintiff responded by stating he wanted to further call into question County's design—and the lack of approval—of the new fencing and how it created a dangerous condition on the Trail. The court noted County had not offered a "design immunity" affirmative defense (see § 830.6), and as a result, the Trail's design "ha[d] no bearing on this case."

The court sustained County's demurrer without leave to amend. It reiterated that County was immune under section 831.4 because the new fencing was a "condition" of the Trail within the meaning of that section, and concluded plaintiff had not been "able to tell me what [he] could do, if possible, [to] plead something else. It's not there." The court dismissed the action with prejudice, and judgment was entered accordingly.

## DISCUSSION

*1. Legal Background*

### *A. Standard of Review*

"The function of a demurrer is to test the sufficiency of a pleading by raising questions of law." (*Astenius v. State of California* (2005) 126 Cal.App.4th 472, 475 (*Astenius*).) "We independently review the sufficiency of a complaint to state a cause of action." (*Arroyo v. State of California* (1995) 34 Cal.App.4th 755, 760

---

[5]  In the FAC, plaintiff referenced exhibits C and D, but there are no exhibits C and D in the appellate record. Plaintiff attempted to file a motion to augment the record with "a portion of Exhibits B-D," but it was rejected for nonconformance. There was no attempt to refile the motion to augment, so those exhibits are not before us, nor are their alleged contents.

6

(*Arroyo*); *McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415 ["we examine the complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory"].)

On an appeal from a judgment of dismissal entered after a demurrer has been sustained, the issue is whether, assuming the truth of all well pleaded facts and those subject to judicial notice, the complaint alleges facts sufficient to state a cause of action. (*Zelig, supra*, 27 Cal.4th at p. 1126; *Crowley v. Katleman* (1994) 8 Cal.4th 666, 672; *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) We disregard contentions, deductions or conclusions of fact or law. (*Zelig,* at p. 1126.) "'Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.]'" (*Ibid*.)

Not only does "'the plaintiff ha[ve] the burden of showing that the facts pleaded are sufficient to establish every element of the cause of action," but he or she must also "overcome[e] all of the *legal grounds* on which the trial court sustained the demurrer . . . .'" (*Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481, 1490, italics added.) "The judgment must be affirmed 'if any one of the several grounds of demurrer is well taken. [Citations.]'" (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967 (*Aubry*).)

"To determine whether the trial court should, in sustaining the demurrer, have granted plaintiff leave to amend, we consider whether on the pleaded and noticeable facts there is a reasonable possibility of an amendment that would cure the complaint's legal defect or defects." (*Yvanova, supra*, 62 Cal.4th at p. 924.) "The burden of proving such reasonable possibility is squarely on the plaintiff." (*Zelig, supra*, 27 Cal.4th at p. 1126.) "While the decision to sustain or overrule a demurrer is a legal ruling subject to de novo review on appeal, the granting of leave to amend involves an exercise of the trial court's discretion." (*Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th 1494, 1501 (*Lazar*).) Thus, we review a decision not to grant further leave to amend for an abuse of discretion.

7

(Code Civ. Proc., § 472c, subd. (a); *Rosen v. St. Joseph Hospital of Orange County* (2011) 193 Cal.App.4th 453, 458.)

Specific to the issue in the case before us, we note that "[a]lthough the purpose for which a . . . trail [is] being used is ordinarily viewed as an issue of fact [citation], it becomes one of law if only one conclusion is possible." (*Giannuzzi v. State of California* (1993) 17 Cal.App.4th 462, 467 (*Giannuzzi*).) Thus, where the "fair inferences from the amended complaint" are that plaintiff's purpose for being within the Park was recreational, and "he was injured while in the course of that activity . . . the application of section 831.4 is established as a matter of law." (*Ibid.*)

Here, plaintiff does not contend that the Trail is not a "trail," nor that the Park is not a "recreational" area within the meaning of section 831.4. Moreover, he does not dispute the purpose for which he was using the Trail. Instead, his sole focus is on the new fence. Section 831.4 therefore applies to this case as a matter of law.

*B. Trail Immunity Under Section 831.4*

"Under the Government Claims Act (Gov. Code, § 810 et seq.), there is no common law tort liability for public entities in California; instead, such liability must be based on statute."[6] (*Guzman v. County of Monterey* (2009) 46 Cal.4th 887, 897, citing § 815, subd. (a).) The Government Claims Act (the Act) comprises "'a comprehensive statutory scheme that sets forth the liabilities and immunities of public entities and public employees for torts.'" (*Cordova v. City of Los Angeles* (2015) 61 Cal.4th 1099, 1104-1105.) It "restores sovereign immunity in California except as provided in the [Act] or other statute." (*Williams v. Horvath* (1976) 16 Cal.3d 834, 838.) "[T]he intent of the

---

[6] This division of the Government Code was originally known as the Tort Claims Act. Following the Supreme Court's decision in *City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 741-742, the Legislature amended section 810 and adopted the current short title of the Government Claims Act. (Stats. 2012, ch. 759, § 5.)

[Act] is not to expand the rights of plaintiffs in suits against governmental entities, but to confine potential governmental liability to rigidly delineated circumstances." (*Ibid.*)

It is true that under the Act, "[a]s a general rule, a public entity is liable for injuries resulting from substantial, known dangerous conditions of its property." (*Mercer v. State of California* (1987) 197 Cal.App.3d 158, 164, citing §§ 830, 835.) Even so, this general rule is limited. Section 835 itself specifically acknowledges this limitation: "*Except as provided by statute*, a public entity is liable for injury caused by a dangerous condition of its property . . . ." (§ 835, italics added.) As a result, "[e]ven if a dangerous condition is demonstrated, a public entity may still prevail through a variety of statutory immunities, which the public entity may assert as an affirmative defense." (*Gonzales v. City of Atwater* (2016) 6 Cal.App.5th 929, 945; *Arroyo, supra*, 34 Cal.App.4th at p. 763 [immunity provisions of the Act generally prevail over provisions for liability]; § 815, subd. (b) ["The liability of a public entity . . . is subject to any immunity of the public entity provided by statute].)

"Since all California governmental tort liability flows from the [Act] [citations], the plaintiff must plead facts sufficient to show his cause of action lies outside the breadth of any applicable statutory immunity." (*Keyes v. Santa Clara Valley Water Dist.* (1982) 128 Cal.App.3d 882, 885-886 (*Keyes*).) As discussed, section 831.4 is such a statute.

"The Legislature first enacted the trail immunity statute more than 50 years ago." (*Arvizu v. City of Pasadena* (2018) 21 Cal.App.5th 760, 762 (*Arvizu*) [citing Stats. 1963, ch. 1681].) Section 831.4 provides specific immunity for certain public roads and trails. Thus, "[a] public entity . . . is not liable for an injury caused by a condition of . . . [a]ny unpaved road which provides *access* to fishing, hunting, camping, hiking, riding, including animal and all types of vehicular riding, water sports, recreational or scenic areas . . . ." (§ 831.4, subd. (a), italics added.) Subdivision (b) expands subdivision (a)'s immunity to "[a]ny trail *used* for [those] purposes." (Italics added.)

9

Section 831.4 therefore embraces two related immunities: "subdivision (a) precludes liability for injuries caused by the condition of unpaved roads providing access to 'fishing, hunting, camping, hiking, riding, including animal and all types of vehicular riding, water sports, recreational or scenic areas,' [and] subdivision (b) precludes liability for injuries caused by the condition of trails which are used for these activities . . . ." (*Giannuzzi, supra*, 17 Cal.App.4th at pp. 466-467; see *Lee v. Department of Parks & Recreation* (2019) 38 Cal.App.5th 206, 211 (*Lee*) [immunity attaches to trails that provide "access to recreational activities as well as to trails on which those recreational activities take place"]; *Burgueno v. Regents of University of California* (2015) 243 Cal.App.4th 1052, 1060 ["it is now well established that section 831.4 applies . . . to . . . trails on which [recreational] activities take place"].)

Consequently, section 831.4 gives a governmental entity "'absolute[] immun[ity] from liability for injuries caused by a physical defect of a [recreational] trail' [citation] [or] . . . 'caused by the condition of any trail described in section 831.4.' [Citation.]" (*Montenegro v. City of Bradbury* (2013) 215 Cal.App.4th 924, 929; cf. *Young, supra*, 32 Cal.App.4th at p. 328 ["It is . . . clear that the state is absolutely immune from liability for injuries caused by a physical defect of a [recreational] trail"].)

"'"The plainly stated purpose of immunity for recreational activities on public land is to encourage public entities to open their property for public recreational use, because 'the burden and expense of putting such property in a safe condition and the expense of defending claims for injuries would probably cause many public entities to close such areas to public use.'"' [Citation.]" (*Loeb v. County of San Diego* (2019) 43 Cal.App.5th 421, 431 (*Loeb*); *Amberger-Warren v. City of Piedmont* (2006) 143 Cal.App.4th 1074, 1078 (*Amberger-Warren*) [same].)

Moreover, "'to fulfill its purpose, trail immunity must extend to claims arising from the *design* of a trail, as well as its maintenance.' [Citations.] '[L]ocation, no less than design, is an integral feature of a trail, and both must be immunized for the same

10

reasons.' [Citation.] This immunity is absolute. [Citation.]" (*Leyva v. Crockett & Co., Inc.* (2017) 7 Cal.App.5th 1105, 1109, italics added.)

"Whether a property is considered a 'trail' under section 831.4 turns on 'a number of considerations,' including (1) the accepted definitions of the property, (2) the purpose for which the property is designed and used, and (3) the purpose of the immunity statute. [Citations.]" (*Lee, supra*, 38 Cal.App.5th at p. 211.) As noted, plaintiff does not dispute that the Trail here is a "trail" under section 831.4, and "does not focus on the meaning of 'trail.'"[7]

*2. Because County Was Immune as a Matter of Law, the FAC Failed to State a Cause of Action and No Amendment Could Cure that Deficiency*

   *A. The Doctrine of Trail Immunity Forecloses Plaintiff's Claim*

Plaintiff contends "[t]he crux of this case is whether the [new wire-cable] fence is a dangerous condition under the meaning of [section ]835." Not so. The actual "crux" of this case is whether, on the facts as alleged in plaintiff's complaints and exhibits, section 831.4 immunizes County from liability for plaintiff's injuries as a matter of law.

If County is statutorily immune in this matter as a matter of law, the question of whether the new fence did or did not constitute a dangerous condition is irrelevant. Instead, if plaintiff's purpose for being on the Trail within the Park was recreational cycling, and he was injured during the course of that activity, "the application of section 831.4 is established as a matter of law," and "[w]hether the complaint otherwise states a cause of action for dangerous condition liability is made immaterial by this conclusion." (*Giannuzzi, supra*, 17 Cal.App.4th at p. 467, citing

---

[7] Exhibit A's photos showed the new fencing traversing directly across the Trail and the new vertical wooden fenceposts installed into and evenly spaced across the Trail. Plaintiff's admission in his original complaint to riding his bike *on* the Trail when he collided with the fence further supports a conclusion that the new fence was a part—or condition—of the Trail.

11

section 815, subd. (b); cf. *Winterburn v. City of Pomona* (1986) 186 Cal.App.3d 878, 882 [section 831.2's absolute immunity for dangerous natural conditions of unimproved public property unaffected by city's *knowledge* of a dangerous condition].) And because we conclude County is immune under section 831.4, that is dispositive of this appeal.

In *Prokop v. City of Los Angeles* (2007) 150 Cal.App.4th 1332 (*Prokop*), the plaintiff sued the City of Los Angeles after he suffered injuries while bicycling on a public bikeway along the Los Angeles river designed by the city. (*Id.* at p. 1335.) While leaving the bikeway through an opening provided for cyclists, the plaintiff ignored messages painted on the pavement that read "WALK BIKE," and collided with a chain link fence. (*Ibid*.) The trial court granted summary judgment for the city, finding it was immune under section 831.4. (*Id.* at p. 1336.) The plaintiff appealed, arguing in part that his injury was caused by the design of the bicycle gate rather than a condition of the bikeway. (*Id.* at p. 1341.)

The court rejected this argument, holding the "condition" of the bikeway included the design of the bicycle gate. (*Prokop, supra*, 150 Cal.App.4th at pp. 1341-1342.) The court also rejected the plaintiff's claim that trail immunity did not apply because the accident did not occur on the bikeway itself, and instead "occurred outside the confines of the bikeway." It held "[a] gateway to or from a bike path is patently an integral part of the bike path." (*Id.* at p. 1342.)

Here, plaintiff's pleadings admitted the old wooden lodgepole fence "demark[ed] a physical barrier that Plaintiff usually maneuvered around when he made a shortcut around the trail." It "separate[ed the northern and southern] trails perpendicular to the Wagon Wheel Canyon Trail bicycle path." The new fence "was installed at the exact location where the wooden lodgepole had previously been," and "divided [the] two trails perpendicular to the Wagon Wheel Canyon Trail, separating each direction of travel from one another." His inconsistent pleading allegations notwithstanding, plaintiff's photo exhibit showed the new fence had an opening at its western terminus where

12

pedestrians and cyclists could pass through to get from the northern part of the Trail to the southern part. Put simply, it was a "gateway" between the northern and southern segments of the Trail.

We discern no meaningful distinction between the "gateway" in *Prokop* and the new fence traversing the Trail loop in this case. (Cf. *Amberger-Warren, supra*, 143 Cal.App.4th at p. 1085 [rejecting the plaintiff's attempt to avoid city's immunity "by identifying the hill next to the trail, rather than the trail itself, as a dangerous condition"].)

Also instructive here is *Reed v. City of Los Angeles* (2020) 45 Cal.App.5th 979 (*Reed*). In *Reed*, the plaintiff was riding his bicycle on a paved path adjacent to a sports field in MacArthur Park when he rode into a rope tied to a badminton net that had been left stretched across the path. (*Id.* at p. 981.) The parties described him as having been "clotheslined" by the rope. (*Ibid.*, fn. 1.) He fell backward off his bicycle and suffered various injuries as a result of the contact with the rope and his fall. (*Ibid.*) The trial court granted the city's motion for summary judgment, and the Court of Appeal affirmed. "A badminton net is not a dangerous object in its ordinary context. But a badminton net stretched across a trail may create a dangerous condition. That is only true because it impedes the regular use of the trail." (*Id.* at p. 984.) Even so, "[b]ecause the danger here is *inherently connected to and exists only because of its connection with the trail*, we conclude the doctrine of trail immunity bars [the plaintiff's] claims against the City and its employees." (*Ibid.*, italics added.)

Here the new wire-cable fencing not only stretched perpendicular to and across the Trail, but it also ran parallel to the Trail along its western boundary. Even more than a random badminton net, therefore, the new fencing here was a *part* of the Trail itself. In other words, the new perpendicular fence was "inherently connected to" and existed "only because of its connection with the trail." (*Reed, supra*, 45 Cal.App.5th at p. 984.) Therefore, the doctrine of trail immunity equally applies here.

Plaintiff states County failed to give warnings about the new fence and its presence, asserting "there were no signs present whatsoever which warned of the dangerous condition."  We assume he is implying County is not entitled to immunity under section 831.4 because it failed to warn of a dangerous condition created by the gray colored cables in the new fence allegedly blending in with the gray colored gravel surrounding it so as to render them "invisible."  However, he provides no authority or argument showing how a lack of warning is relevant to our inquiry and, in fact, he never mentions the issue again.  That alone would justify our summary rejection of the argument.  (*Central Valley Gas Storage, LLC v. Southam* (2017) 11 Cal.App.5th 686, 694-695.)  More importantly, "nothing in section 831.4 makes immunity contingent on giving proper warnings.  The immunity granted by section 831.4 is absolute."  (*Astenius, supra*, 126 Cal.App.4th at p. 476; cf. *Arroyo, supra*, 34 Cal.App.4th at p. 763 [liability for failure to warn is "inconsonant" with section 831.2's immunity for natural conditions of public property].)

Plaintiff insists the new fence created a dangerous condition that "was not part of the trail design . . . and was a condition that created a significant risk when used in a foreseeable manner (therefore a dangerous condition)."  He further contends "trail immunity is not applicable where the dangerous condition was not part of the design of the Trail and the County created the dangerous condition."  (Capitalization omitted.)  He provides no applicable authority for such a "design" prerequisite for section 831.4 immunity, nor have we found any.

In his reply brief, plaintiff takes a different tack by conceding "design decisions" might be protected by trail immunity, but designs that have not been specifically *approved* by the governmental entity do not "warrant that protection."  He again provides no authority which supports this distinction, and we find it irrelevant because, as discussed, "[t]he immunity granted by section 831.4 is absolute," and not limited by such external considerations.  (*Astenius, supra*, 126 Cal.App.4th at p. 476.)

14

Plaintiff refers us to *Cameron v. State of California* (1972) 7 Cal.3d 318 (*Cameron*), although he admits that case involved "design immunity" under a different section of the Act (§ 830.6), and whether the state's design plans for a highway created a dangerous condition that resulted in an automobile accident. *Cameron* is further distinguishable because the judgment in that case came after the trial court granted a motion for nonsuit at the close of evidence, concluding the plaintiff had failed to prove the highway in question created a dangerous condition. The trial court also granted a directed verdict on the ground that the state's evidence had established the defense of design immunity. (*Id.* at p. 322, & fn. 3.) Such evidence-based considerations are not present in the case before us.

More importantly, the statute at issue in *Cameron* itself provides that "design immunity" applies *only* "where such plan or design has been approved in advance by the legislative body of the public entity or by some other body or employee exercising discretionary authority and where the court finds any substantial evidence on the basis of which a reasonable entity or employee could have approved the plan. [Citation.]" (*Cameron, supra*, 7 Cal. 3d at p. 324; § 830.6.) In contrast, plaintiff's arguments to the contrary, trail immunity under section 831.4 is not contingent, and it contains no similar factual predicates, statutory or otherwise. *Cameron* is simply inapt.

Plaintiff also cites *Garcia v. American Golf Corp.* (2017) 11 Cal.App.5th 532 (*Garcia*), but it too is inapposite. In *Garcia*, a child was injured by an errant golf ball while his mother was pushing him in a stroller on the Rose Bowl Loop, a pedestrian walkway located adjacent to the commercially operated, revenue-generating, Brookside Golf Course. (*Id.* at p. 536.) The golf course was owned by the City of Pasadena and operated by American Golf Corporation under a lease agreement. (*Ibid.*) The child and his mother sued American Golf for negligence and the City of Pasadena for dangerous condition of public property. (*Id.* at p. 537.) The trial court granted the city's motion for summary judgment on trail immunity grounds. (*Id.* at p. 539.)

15

The Court of Appeal reversed. It concluded that even if the city could claim trail immunity with respect to the alleged unsafe condition of the *walkway* (exposure to errant golf balls), it could not do so for the alleged unsafe condition of the *golf course* (insufficient barriers or unsafe design). Thus, the court held that "a *public golf course* cannot assert a trail immunity defense when: (1) the golf course is adjacent to a trail abutting a public street; (2) the golf course is a commercially operated, revenue-generating enterprise; (3) the golf course has a dangerous condition that exposes people outside it to a risk of harm from third parties hitting errant golf balls; and (4) the dangerous condition of the golf course caused harm to a user of the trail." (*Garcia, supra*, 11 Cal.App.5th at p. 546, italics added.) In terms of the policy reasons behind trail immunity, the court pointed out that the risk of harm by third party golfers existed regardless of the trail, and that the golf course could afford to fund safety features, obtain insurance, and pay lawyers. (*Id.* at p. 545.)

The case before us does not involve either a golf course, a revenue-generating county asset, or a third party. (See *Arvizu, supra*, 21 Cal.App.5th at pp. 770-771 [distinguishing *Garcia* on these same grounds]; cf. *Amberger-Warren, supra*, 143 Cal.App.4th at p. 1084 [a public entity is not liable for a dangerous condition of public property based on third party conduct alone]; *Young, supra*, 32 Cal.App.4th at p. 329 [reversing trial court's failure to sustain demurrer to the first amended complaint without leave to amend where third party conduct *plus* a physical trail defect were alleged, because "the state is absolutely immune from a physical trail defect"].) Simply put, the trail immunity doctrine applies to trails, not golf courses, and *Garcia* is of no assistance to plaintiff here.

Giving plaintiff's allegations a reasonable interpretation, reading them as a whole and all parts in their context, the only fair inferences to be drawn from the FAC are that his purpose for being within the Park that day was the recreational riding of his bicycle on the Trail, and that he was injured during the course of that activity. The new

16

fencing was located upon the Trail, physically traversing it at one point so as to affect movement from one segment of the Trail loop to the other. In other words, it was a part and condition of the Trail. We conclude that "[i]n these circumstances the application of section 831.4 is established as a matter of law" (*Giannuzzi, supra*, 17 Cal.App.4th at p. 467), and County is immune from liability for plaintiff's injuries. And "[i]f no liability exists as a matter of law, we must affirm . . . the judgment sustaining the demurrer." (*Lazar, supra*, 69 Cal.App.4th at p. 1501.)

### B. There Is No Reasonable Possibility of Further Amendment

Ordinarily, "it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment." (*Aubry, supra*, 2 Cal.4th at p. 967.) Although we may in the first instance consider the question whether plaintiff could cure the defect by an amendment, it is nevertheless plaintiff who "bears the burden of proving an amendment could cure the defect." (*T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162.) Thus, "plaintiff must show in what manner [his FAC could be amended] and how such amendment will change the legal effect of the pleadings." (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349.)

As noted, in an action against a governmental entity, plaintiff must plead facts sufficient to show his cause of action lies outside the breadth of any applicable statutory immunity. (*Keyes, supra*, 128 Cal.App.3d at pp. 885-886.) Here, that would entail plaintiff pleading additional facts sufficient to show section 831.4's trail immunity does not apply to his action.

In his FAC, plaintiff attempted to avoid section 831.4 by alleging facts relating to the lack of approval for the new fence, and how its gray-on-gray design was inherently flawed. As discussed, however, this is not a design immunity case and whether, or by whom, approval for the new fencing was or was not made is irrelevant. Plaintiff has provided no authority to convince us otherwise.

17

Similarly, here plaintiff has not met his burden to show he could amend his complaint to overcome section 831.4. Indeed, he does not even address the issue in his appellate briefing. "'While such a showing can be made for the first time to the reviewing court [citation], it must be made.'" (*Rubenstein v. The Gap, Inc.* (2017) 14 Cal.App.5th 870, 881.) "From the time of [the] demurrer to his original complaint, plaintiff knew that section 831.4 would figure in the litigation. He was therefore obligated to 'plead facts sufficient to show his cause of action lies outside the breadth of any applicable statutory immunity.' [Citation.] He failed." (*Giannuzzi, supra*, 17 Cal.App.4th at p. 467.) So too here.

Plaintiff did not, and cannot, overcome the trail immunity bar on the facts of this case. Therefore, the trial court did not abuse its discretion by sustaining County's demurrer without leave to amend.

*3. Conclusion*

"[W]e would like to live in a world of resources sufficient to guarantee reasonable safety at all times, [but] 'users of recreational trails or bike paths generally understand the risk of injury inherent in [their use],' and recognize that "'[a] large portion of the activities comprising modern public park and recreation programs . . . might well be curtailed, deferred or even completely eliminated if the risk of tort liability were to impose unduly large obligations upon the public treasury."'" (*Amberger-Warren, supra*, 143 Cal.App.4th at p. 1085.) Similarly, "'[w]e recognize trail immunity comes at a cost to those denied recovery for their injuries on public land. But so did the Legislature, and we must defer to its calculus.'" (*Loeb, supra,* 43 Cal.App.5th at p. 436, citing *Arvizu, supra*, 21 Cal.App.5th at p. 763.)

Because plaintiff's pleadings and exhibits show the new wire-cable fencing here was inherently linked to and existed only because of its connection to the Trail, section 831.4 bars his claims against County as a matter of law. The trial court properly sustained the demurrer without leave to amend.

18

## DISPOSITION

The judgment entered following the trial court's order sustaining County's demurrer to plaintiff's FAC without leave to amend is affirmed. County is entitled to its costs.


THOMPSON, J.

WE CONCUR:


ARONSON, ACTING P. J.


IKOLA, J.

19

# APPENDIX





**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SEAN NEALY, | G058036 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 30-2018-01036469) |
| COUNTY OF ORANGE, | O R D E R |
| Defendant and Respondent. | |

Koeller, Nebeker, Carlson Haluck LLP requested that our opinion, filed on August, 24, 2020, be certified for publication.  It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c).  The request for publication is GRANTED.  The opinion is ordered published in the Official Reports.


THOMPSON, J.

WE CONCUR:


ARONSON, ACTING P. J.


IKOLA, J.