Filed 1/31/23; Certified for Publication 2/23/23 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| GABRIELA MARTINEZ MARIN et al.,<br><br>        Plaintiffs and Appellants,<br><br>v.<br><br>DEPARTMENT OF TRANSPORTATION,<br><br>        Defendant and Respondent. | A161844<br><br>(Alameda County Super. Ct. No. RG16819984) |

This is an appeal from judgment in a wrongful death suit after the trial court granted summary judgment in favor of defendant Department of Transportation (DOT).  Plaintiffs Gabriela Martinez Marin and Miguel Angel Rodriguez Martinez, Jr., are the surviving family members of decedent Miguel Angel Rodriguez De La Cruz, who was killed on a highway owned and operated by the DOT.  At the time, decedent was employed as a construction worker for the DOT's subcontractor O.C. Jones & Sons, Inc. (O.C. Jones).  Plaintiffs sued the DOT for, inter alia, creating a dangerous condition on public property in violation of Government Code[1] section 835 and vicarious liability for its employees' negligence under section 815.2.

_____

[1] Unless otherwise stated, all statutory citations herein are to the Government Code.

1

On appeal, plaintiffs contend the court erred in granting summary judgment for the DOT because admissible evidence was wrongfully excluded and material issues of fact exist as to the DOT's liability for decedent's death.

We conclude plaintiffs failed to present evidence that the DOT retained control over the construction site where decedent was killed and actually exercised that retained control in such a way as to affirmatively contribute to his injuries, as required under California law. (*Sandoval v. Qualcomm Inc.* (2021) 12 Cal.5th 256, 264 (*Sandoval*).) Accordingly, we affirm the trial court's grant of summary judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Decedent was employed by O.C. Jones as a construction worker. O.C. Jones was under contract with the DOT to perform construction work along a stretch of Interstate 580 (I-580) within the City of Oakland (hereinafter, project site). This work included grinding and removing old asphalt and placing new asphalt. Due to heavy traffic along the I-580 corridor, much of this work was performed at night because it required lane closures.

On or about September 19, 2015, decedent was part of a construction crew tasked with removing asphalt at the project site. To conduct this work, the DOT complied with O.C. Jones's request to close the number 1 and number 2 lanes of I-580. To mark the closure, between 7 and 8 p.m., O.C. Jones placed traffic signs and an arrow board. O.C. Jones then closed and separated the two lanes using a cone pattern with reflective tape. In addition, there were multiple trucks and machines at the project site. The project site was further marked by multiple signs as well as by construction and street lights. Several DOT employees were present at the project site at

this time of evening, including construction engineer Hana Khoury, construction field engineer Markus Lansdowne, and inspector John Ruzic.

Sometime after 8 p.m., an O.C. Jones representative phoned Ruzic to request a road closure in a different area in order to perform the work, which Ruzic authorized.

Later that evening, it was discovered that O.C. Jones's grinding equipment was ineffective in removing certain pockets of asphalt and that manual removal was required. Decedent's team was thus tasked with performing this work with hand and pneumatic tools. Decedent went to work along the eight-foot-wide left shoulder adjacent to the number 1 lane, removing the asphalt and then hand shoveling the loose material into a bucket. This work, located away from the main paving operation, was illuminated by headlights on a front loader and ladder-mounted lights on a pickup truck with an air compressor trailer, both of which were positioned in the left shoulder against a tall concrete retaining wall.

About 12:18 a.m. on September 19, 2015, decedent was speaking with the operator of the front loader when a car operated by a drunk driver entered the closed lanes of the project site and struck him before coming to a stop in the number 2 lane. Decedent died on the scene from multiple blunt traumatic injuries.

Plaintiffs, decedent's wife and minor child, subsequently brought this wrongful death lawsuit against the DOT, filing the operative second amended complaint on December 20, 2017.[2] This complaint asserted three causes of action against the DOT: (1) vicarious liability for the negligence of its

---

[2] Plaintiffs also sued the Department of the California Highway Patrol, Santos Andres Pablo-Carrillo and Does 1–30. However, the DOT is the only defendant involved in this appeal.

3

employees (§ 815.2); (2) failure to discharge a mandatory duty (§ 815.6); and (3) dangerous condition on public property (§ 835). Plaintiffs sought both compensatory and punitive damages. The DOT subsequently answered the second amended complaint, raising 26 affirmative defenses.

On January 3, 2018, the DOT successfully demurred to plaintiffs' cause of action for failure to discharge a mandatory duty. The court overruled the DOT's demurrer to the causes of action for a dangerous condition on public property and vicarious liability for its employees' negligence.

On February 11, 2020, the DOT moved for summary judgment as to the remaining two causes of action. The DOT argued as to both causes of action that (1) it was immune from liability as a public entity (§§ 830.8, 845); (2) the lawsuit was barred under *Privette v. Superior Court* (1993) 5 Cal.4th 689 (*Privette*) because the DOT properly delegated workplace safety to O.C. Jones; and (3) the drunk driver's criminal conduct that caused decedent's death was not reasonably foreseeable.

In support of its motion, the DOT offered a declaration from DOT inspector Ruzic, who attested that his role at the project site was to ensure O.C. Jones was complying with the terms of the contract, including its safety obligations. Ruzic did not instruct or control O.C. Jones as to how to comply with its safety obligations. Further, on the night in question, Ruzic observed that O.C. Jones complied with its safety plan by: (1) placing warning signs up at 7 p.m.; (2) putting the arrow board in place at 8 p.m.; and (3) ensuring all the tapers set up by the cones were in proper position by around 8 p.m. Sometime after 8 p.m., an O.C. Jones representative phoned Ruzic to request a road closure in a new area. Ruzic authorized the change before leaving the project site for a meal. As such, he was not present when the accident occurred.

4

The DOT also offered a declaration from DOT construction engineer Khoury, who supervised the project.  Khoury attested that the contract between the DOT and O.C. Jones was entered into on February 18, 2015, and delegated to O.C. Jones the responsibility for selecting the means and methods for performing under the contract work, including those designed to ensure worker safety.  According to Khoury, the DOT did not direct O.C. Jones (or any of its contractors) regarding the means and methods of performing the work required under the contract.

Plaintiffs opposed this motion and offered their own evidence. Plaintiffs argued, inter alia, that triable issues of fact existed as to whether the DOT retained control over the construction project and whether, notwithstanding the drunk driver's conduct, the DOT could be held liable for its own negligence.  In support of these arguments, plaintiffs relied on a part of the parties' contract entitled 2010 Standard Specifications, part 5 (Control of Work), which stated that the DOT's resident engineer was responsible for making final decisions on questions regarding the contract, including the manner of work performance and work quality and acceptability.

Plaintiffs also offered the declaration of Christian Engelmann, a civil and traffic engineer formerly employed by the DOT (Engelmann declaration). Engelmann attested as to his expertise and familiarity with highway traffic safety in general and the DOT's highway traffic safety policies and procedures in particular.  Based on his professional experience with the DOT as well as his engineering expertise and review of relevant case materials, Engelmann opined, inter alia, that the project site constituted a dangerous condition on the night in question, that decedent's death was foreseeable based on said condition, and that the DOT had a duty, which it failed, to inspect the project site for proper safety measures.

5

On September 4, 2020, the DOT filed objections to 32 statements in the Engelmann declaration. The grounds asserted included irrelevance, undue prejudice, speculation, lack of foundation, improper legal conclusion, and inadmissible hearsay.

On November 9, 2020, following a contested hearing, the trial court concluded that, under *Privette* and its progeny, the DOT was not liable for decedent's death as a matter of law because the DOT delegated to O.C. Jones its duty to provide a safe work environment. Additionally, the court found no liability because the conduct of the drunk driver that killed decedent was not reasonably foreseeable. Finally, the court sustained 31 of the DOT's 32 objections to the Engelmann declaration without explanation. Accordingly, judgment was entered for the DOT. This timely appeal followed.

## DISCUSSION

Plaintiffs challenge the grant of summary judgment in DOT's favor on the grounds that (1) the trial court's "blanket ruling" sustaining 31 of 32 evidentiary objections was a manifest abuse of discretion and (2) material issues of disputed fact exist as to their causes of action for vicarious liability under section 815.2 and creating a dangerous condition on public property under section 835. We address each issue in turn after setting forth our standard of review.

A defendant moving for summary judgment must show "that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to the cause of action." (Code Civ. Proc., § 437c, subd. (p)(2).) Summary judgment is proper where "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (*Id*., subd. (c).)

6

On appeal, "we take the facts from the record that was before the trial court . . . . ' "We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were [properly] made and sustained." ' " (*Yanowitz. v. L'Oreal USA, Inc*. (2005) 36 Cal.4th 1028, 1037, citation omitted.)  In doing so, "we exercise an independent review to determine if the defendant moving for summary judgment met its burden of establishing a complete defense or of negating each of the plaintiff[s'] theories and establishing that the action was without merit." (*Fisherman's Wharf Bay Cruise Corp. v. Superior Court* (2003) 114 Cal.App.4th 309, 320.)  Ultimately, we must affirm summary judgment " 'if it is correct on any of the grounds asserted in the trial court, regardless of the trial court's stated reasons.' " (*Arvizu v. City of Pasadena* (2018) 21 Cal.App.5th 760, 763 (*Arvizu*).)

## I.     *The court failed to discharge its duty to expressly rule on the DOT's individual evidentiary objections.*

Below, the DOT raised 32 objections to the 14-page expert declaration submitted on plaintiffs' behalf by Christian Engelmann, a civil and traffic engineer who worked for the DOT from 1999 to 2016.  The trial court issued a blanket ruling sustaining all but one of the 32 objections, without explanation.  On appeal, plaintiffs argue this ruling was a manifest abuse of discretion.  The following principles govern our review.

Generally, we review the trial court's evidentiary rulings for abuse of discretion. (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 405.) Under this standard, we reverse an evidentiary ruling only if the appellant makes a showing that the trial court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a miscarriage of justice. (*People v. Avitia* (2005) 127 Cal.App.4th 185, 193.)

This standard, however, assumes that the trial court met its obligation with respect to ruling on evidentiary objections. "[I]n the summary judgment setting, . . . a trial court presented with timely evidentiary objections in proper form must expressly rule on the individual objections, and if it does not, the objections are deemed waived and the objected-to evidence included in the record." (*Demps v. San Francisco Housing Auth.* (2007) 149 Cal.App.4th 564, 578 (*Demps*).) Moreover, "expressly rul[ing] on the individual objections" (*ibid.*) does not mean ruling as the trial court did here, by simply issuing a blanket order sustaining 31 of 32 objections without identifying any particular basis. And this is despite the fact that, for nearly all of its objections, the DOT offered multiple grounds for exclusion. Indeed, for 28 of these objections, the DOT offered four or five separate grounds for exclusion. Yet, given the court's blanket ruling, we have no way of knowing whether the court accepted all of these grounds or just one. As aptly explained by our First Appellate District colleagues under more egregious circumstances: "It is true that the trial court 'ruled,' however conclusorily, that all objections save one were sustained. This is hardly a ruling, as it could not provide any meaningful basis for review." (*Nazir v. United Air Lines, Inc.* (2009) 178 Cal.App.4th 243, 255, 257 [trial court committed a "manifest abuse of discretion" in sustaining all but one of the defendants' 764 objections without explanation].)

Under these circumstances, where the trial court failed to discharge its obligation to expressly rule on the DOT's individual objections in a manner that would allow a meaningful basis for our review, we give plaintiffs the benefit of the situation and consider all the evidence in the record, including the Engelmann declaration, as though the DOT's objections were waived. (*Demps, supra*, 149 Cal.App.4th at p. 578.)

8

Reviewing the record in this light, we nonetheless conclude for reasons set forth *post* that the trial court's grant of summary judgment was correct. (*Arvizu, supra*, 21 Cal.App.5th at p. 763 [summary judgment upheld if correct on any ground].)

## II. *Summary judgment was proper under Privette and its progeny.*

Plaintiffs' causes of action arise under the Government Claims Act (§ 810 et seq.). Specifically, the first remaining cause of action arises under section 815.2, pursuant to which public entities are liable for injuries caused by their employees within the scope of their employment "if the act or omission would, apart from this section, have given rise to a cause of action against that employee . . . ." (§ 815.2, subd. (a).) Section 815.2, subdivision (b) then states, "Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."

Plaintiffs' second remaining cause of action arises under section 835, which provides: "Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either: [¶] (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or [¶] (b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

9

Relevant to both claims, plaintiffs contend disputed issues of fact exist as to whether decedent's death was the result of dangerous conditions at the project site that the DOT and its employees had notice of yet negligently failed to prevent or correct. These dangerous conditions included "the positioning of the [construction] equipment in the shoulder, the widths [*sic*] of the shoulder lane, the inadequate lighting, the proximity of the closure to incoming traffic, and the lack of attenuator vehicles."

We agree with the trial court that, under *Privette, supra*, 5 Cal.4th 689, and its progeny, the DOT cannot be held liable under plaintiffs' theory because the DOT expressly delegated jobsite safety to decedent's employer, O.C. Jones.

## A. *Privette* and Its Progeny.

*Privette, supra*, held that when "the injuries resulting from an independent contractor's performance of inherently dangerous work are to an employee of the contractor, and thus subject to workers' compensation coverage, the doctrine of peculiar risk affords no basis for the employee to seek recovery of tort damages from the person who hired the contractor but did not cause the injuries." (5 Cal.4th at p. 702.)

Subsequent to *Privette*, the California Supreme Court decided a case more on point with ours (*SeaBright Ins. Co. v. US Airways, Inc.* (2011) 52 Cal.4th 590). There, the court considered whether the rule announced in *Privette* applied when a hirer failed to comply with workplace safety requirements concerning the subject matter of the contract and a worker's injury is alleged to have occurred as a consequence of that failure. Holding that the *Privette* rule applies in that circumstance, the court held: "By hiring an independent contractor, the hirer implicitly delegates to the contractor any tort law duty it owes *to the contractor's employees* to ensure the safety of

10

the specific workplace that is the subject of the contract. That implicit delegation includes any tort law duty the hirer owes to the contractor's employees to comply with applicable statutory or regulatory safety requirements." (*Id*. at p. 594.)

There are, of course, exceptions to the *Privette* rule. Relevant here, plaintiffs argue this case falls under the exception established in *Hooker v. Department of Transportation* (2002) 27 Cal.4th 198 (*Hooker*) because the DOT retained control over jobsite safety.

Plaintiffs read *Hooker* too broadly. *Hooker* held that "a hirer of an independent contractor is not liable to an employee of the contractor *merely because* the hirer retained control over safety conditions at a worksite"; rather, "a hirer is liable to an employee of a contractor insofar as a hirer's exercise of retained control *affirmatively contributed* to the employee's injuries." (*Hooker, supra*, 27 Cal.4th at p. 202 [upholding summary judgment where, "although plaintiff raised triable issues of material fact as to whether defendant retained control over safety conditions at the worksite, plaintiff failed to raise triable issues of material fact as to whether defendant actually exercised the retained control so as to affirmatively contribute to the [decedent's] death" (italics added)].) Thus, the court affirmed summary judgment for the defendant because "[t]here was, at most, evidence that Caltrans's safety personnel were aware of an unsafe practice and failed to exercise the authority they retained to correct it." (*Id*. at p. 215; see *Kinney v. CSB Construction, Inc.* (2001) 87 Cal.App.4th 28, 39 ["The mere failure to exercise a power to compel the subcontractor to adopt safer procedures does not, without more, violate any duty owed to the plaintiff"].)

Recently, our Supreme Court revisited *Hooker*'s exception to the *Privette* doctrine in *Sandoval, supra*, 12 Cal.5th 256. In doing so, the court

11

confirmed, "If a contract worker becomes injured after that delegation [of safety] takes place, we presume that the contractor alone—and not the hirer—was responsible for any failure to take reasonable precautions." (*Id*. at p. 271.) Thus, "[c]ontract workers must prove that the hirer *both* retained control *and* actually exercised that retained control in such a way as to affirmatively contribute to the injury." (*Id*. at p. 276.) "A hirer 'actually exercise[s]' its retained control over the contracted work when it involves itself in the contracted work 'such that the contractor is not entirely free to do the work in the contractor's own manner.' (Rest.3d Torts, [Liability for Physical and Emotional Harm], § 56, com. c, p. 392; [citations].)" (*Ibid*.) Moreover, "the affirmative contribution requirement can be satisfied only if the hirer in some respect induced—not just failed to prevent—the contractor's injury-causing conduct," or "where the hirer's exercise of retained control contributes to the injury independently of the contractor's contribution (if any) to the injury." (*Id*. at p. 277.)

## B. Application of These Principles to the Undisputed Evidence in the Record.

To begin, it is undisputed that the DOT hired O.C. Jones, decedent's employer, to perform work on a jobsite owned by the DOT and that decedent was killed while working at the site. It is also undisputed that the contract between the DOT and O.C. Jones includes section 7, which expressly delegated matters of safety at the project site to O.C. Jones. This section states in relevant part: "In the performance of this contract, the contractor shall comply with all applicable Federal, State, and local laws governing safety, health and sanitation [citation]. *The contractor shall provide all safeguards, safety devices and protective equipment and take any other needed actions as it determines, or as the SHA contracting officer may determine, to be reasonably necessary to protect the life and health of employees on the job*

12

*and the safety of the public and to protect property in connection with the performance of the work covered by the contract.* [¶] . . . [T]he contractor and any subcontractor shall not permit any employee, in performance of the contract, to work in surroundings or under conditions which are . . . hazardous or dangerous to his or her health or safety . . . ." (Italics added.)

"This evidence was sufficient to establish that the *Privette* presumption applied and, therefore, shifted the burden to plaintiff[s] to raise a triable issue of fact." (*Alvarez v. Seaside Transportation Services LLC* (2017) 13 Cal.App.5th 635, 644.) To do so, plaintiffs direct us to section 5 of the contract. This provision states in relevant part that the DOT's residential engineer at the project site (here, Hana Khoury) is authorized to make the final decision on questions regarding the contract, including as to "[w]ork quality and acceptability" and the "manner of performance of the work."

We agree with the DOT that this provision does not suffice to raise a triable issue as to whether the DOT retained control over safety at the project site and actually exercised this retained control in such a way as to affirmatively contribute to decedent's death. (*Sandoval, supra*, 12 Cal.5th at p. 276.) Section 5 refers to work quality/acceptability and the manner of work performance, not project site safety. As to that particular issue, plaintiffs concede the DOT "did not direct or order the means and methods used by O.C. Jones to provide worker safety" and "did not have the responsibility for setting up the barriers, cones or warning signs." Plaintiffs further concede the DOT "did not prevent OC Jones from complying with its obligation to provide a safe work site."

Notwithstanding their concessions, plaintiffs point to the following facts in their continued attempt to create a triable issue as to the DOT's liability. First, the DOT was "responsible for assessing whether the

13

construction zone was eminently unsafe and to stop the construction work from proceeding." Moreover, "while [the DOT] did not have the responsibility for setting up the barriers, cones or warning signs . . . , it did authorize lane closures. It could also authorize the use of attenuator vehicles at construction sites." Finally, the DOT "expected its employees to be familiar with its Code of Safe Practices" and required its resident engineer "to file daily reports on the condition of the [project] site," which it did not do.

Consistent with these facts, plaintiffs' expert Engelmann opined that the project site constituted a dangerous condition on the night of decedent's death, that it was foreseeable that an errant vehicle would enter the project site and injure or kill a worker, and that DOT employees had a duty of care to consider the safety of O.C. Jones's employees. According to Engelmann, the DOT employees assigned to the project site when decedent was killed "exercised a poor standard of care" by failing (1) "to inspect for proper safety measures, such as a proper escape route [from errant vehicles], or barrier vehicle, located such that it provides protection to workers [at the project site]"; (2) "to fill out or be familiar with form CEM-0606," i.e., construction safety checklists utilized by the DOT to ensure compliance with safety rules; or (3) "to inspect for proper lighting located such that it provides minimum required illumination [at the project site]." This evidence, viewed in a light favorable to plaintiffs, does not overcome the barrier to liability effected by *Privette* and its progeny. Evidence that the DOT could have authorized a lane closure or use of an attenuator vehicle, "at most, [proved] that [DOT] safety personnel were aware of an unsafe practice and failed to exercise the authority they retained to correct it." (*Hooker, supra*, 27 Cal.4th at p. 215.) Further, evidence that the DOT expected O.C. Jones's employees to learn and to follow safety policies is not evidence that the DOT "*both* retained control

14

*and* actually exercised that retained control in such a way as to affirmatively contribute to the injury." (*Sandoval, supra*, 12 Cal.5th at p. 276; see *id.* at p. 281 ["That [the hirer's] employees may have been trained to provide personal warnings to everyone in the room, or that [its] managers and experts may have considered such warnings 'critical,' does not establish that [the hirer] induced [the independent contractor's] reliance on [the hirer] to provide them"].) Under these circumstances, where it was undisputed the DOT did not direct the means or methods of decedent's work on the day in question or instruct his employer on how to provide for his or his coworkers' safety, summary judgment was appropriate.

*Horne v. Aherne Rentals, Inc.* (2020) 50 Cal.App.5th 192 is instructive. There, similar to here, summary judgment was affirmed for the defendant, who hired the decedent's employer as an independent contractor, because, "[a]t most, plaintiffs' evidence shows defendant passively permitted an unsafe condition." (*Id.* at p. 203.) As the reviewing court explained: "This . . . would be a different case if [the contractor] or one of its employees had asked defendant to take safety measures to be sure the forklift was stable, and defendant promised to do so, but did not follow through. There is no evidence that defendant ever agreed with [the contractor] to implement any safety measure related to the position of the forklift (or any other safety measure). There is no evidence anyone with [the contractor] asked defendant to move the forklift or lower the boom, but defendant did not do so; or that it was impossible or impractical to ask defendant to be sure the forklift was safely positioned to change the tires." (*Ibid.*; accord, *Brannon v. Lathrop Construction Associates, Inc.* (2012) 206 Cal.App.4th 1170, 1180 ["[The hirer's] act of allowing the scaffolding to remain in place while the masonry work proceeded was no more an exercise of retained control over safety than

15

was Caltrans's decision in *Hooker* to allow construction traffic to access the overpass while the crane was being used"].)

Accordingly, for the reasons stated, we agree with the trial court that the *Privette* doctrine serves as an absolute bar to holding the DOT liable for decedent's death under section 835 (dangerous condition) or section 815.2 (vicarious liability for its employees' negligence).  In the words of *Sandoval, supra*, "a hirer's mere authority to prevent or correct a contractor's unsafe practices (retained control) does not, without more, limit the contractor's delegated control over the work."  (12 Cal.5th at p. 278.)[3]

## DISPOSITION

The judgment is affirmed.

_____
Jackson, P. J.

WE CONCUR:


_____
Simons, J.


_____
Burns, J.

A161844/*Marin v. Department of Transportation*

---

[3] Given this holding, we need not address plaintiffs' remaining argument that the trial court erred in concluding that, as a matter of law, the DOT cannot be held liable for the criminal conduct of the drunk driver that killed decedent.  As stated, we uphold the trial court's grant of summary judgment so long as it is correct on any grounds.  (*Arvizu, supra*, 21 Cal.App.5th at p. 763.)

Filed 2/23/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| GABRIELA MARTINEZ MARIN et al.,<br><br>       Plaintiffs and Appellants,<br><br>v.<br><br>DEPARTMENT OF TRANSPORTATION,<br><br>       Defendant and Respondent. | A161844<br><br>(Alameda County<br>Super. Ct. No. RG16819984)<br><br>ORDER CERTIFYING OPINION FOR PUBLICATION |

THE COURT:*

The opinion in the above-entitled matter filed on January 31, 2023, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

Date: _____        _____, P. J.

_____

* Jackson, P. J.; Simons, J.; Burns, J.

1

Trial Court:      Superior Court of the County of Alameda

Trial Judge:      Paul Herbert

Counsel:      Liberation Law Group and Arlo Garcia Uriarte for
          plaintiffs and appellants.

             Tyson & Mendes, James E. Sell and Molly A. Gilardi, for
          defendant and respondent.